# In The United States District Court
# For The Western District of Massachusetts

CIVIL ACTION NO.: 04-30163-MAP
(INJUNCTIVE RELIEF SOUGHT)

| | |
|---|---|
| Julio Toledo, Josh C. Haygood, Rafael Vega, Greg McCain, Martin Santa, David Franco, Juan R. Estrada, Kevin Bell, Howard Lockwood, Jason E. Larrier, Tommie O. Hart, Angel Perez, Pedro R. Mendez, Leonard Matos Jr., Herminio Rivas Jr., <br><br>        PLAINTIFFS <br><br> v. <br><br> IBPO, Local 364, <br><br>        DEFENDANT | |

## COMPLAINT

**TO THE HONORABLE PRESIDING JUDGE:**

1. This is a civil action for race discrimination in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs seek injunctive relief preventing Defendant International Brotherhood of Police Officers, Local 364 (IBPO, Local 364) from discriminating on the basis of race, color and natural origin in violation of the Constitution.

2. This is a civil action whereby Plaintiffs seeks Declaratory Judgment, Preliminary and Permanent Injunctive Relief, and a Temporary Restraining Order. Plaintiffs seeks Preliminary and Permanent Injunctive Relief, enjoining Defendant IBPO, Local 364, their agents, servants and employees and those acting in active concert and with actual notice

---

Emergency Complaint and Application for Injunctive and
Declaratory Relief Including Temporary Restraining                                    PAGE 1 OF 23

there of, from enforcing the Arbitrator's Award, granted on June 25, 2004, which, is in direct conflict with the Consent Decree enumerated in <u>Castro v. Beecher</u>, 459 F.2d 725 (1st Cir. 1972).

3. Plaintiffs pray for Declaratory Judgment to determine the constitutionality of the actions of the Arbitrators Award in exercising jurisdiction over the <u>Castro v. Beecher</u> case and in reassigning badge numbers.

4. An actual controversy exists between the parties involving substantial constitutional issues, in that the actions of the Arbitrator in exercising jurisdiction over the <u>Castro v. Beecher</u> case and in reassigning badge numbers constitute actions delegated to this Court, thereby violating the Consent Decree.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred upon this Court by 28 U.S.C.§§1331, as this action seeks redress pursuant to a law of the United States and for violations of plaintiffs' constitutional and civil rights.

6. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202 implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the Temporary Restraining Order.

7. One or more Defendants reside in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Venue is therefore proper in the United States District Court for the Western District of Massachusetts pursuant to 28 U.S.C. *1391(b)

## PARTIES

8. Plaintiffs are and were at all times relevant herein, individuals and residents of Hampden County Massachusetts and are police officers of the Springfield Police Department.

9. Plaintiffs are minority Springfield Police Officers. (See Affidavits)

10. Defendant IBPO, Local 364, is and was all times relevant herein, a resident of Hampden County Massachusetts and is the entity responsible for enforcing the Arbitrator's Award granted on June 25, 2004.

## STATEMENT OF THE CASE

11. The Plaintiffs are employed as Police Officers with the Springfield Police Department.

12. Unless the Defendant is immediately enjoined, the IBPO, Local 364 will begin reassigning badge numbers in direct conflict with this Courts' 1973, Consent Decree enumerated in Castro v. Beecher, 365 F.Supp. 655 (D. Mass. 1973), and the IBPO will undermine the effect this Court intended when deciding Castro v. Beecher.

13. The Springfield Police Department's hiring procedures are governed in part by a consent decree that was entered in 1973. See Castro v. Beecher, 365 F. Supp. 655,

14. It has been the past practice of the Springfield Police Department, as the hiring authority, to issue badge numbers to patrol officers by following the civil service list, which is formulated in a one-for one manner in accordance with the Consent Decree enumerated in Castro v. Beecher, 495 F.2d 725 (1st Cir. 1972). This one-for-one appointment has, to date, allowed the Springfield Police Department to begin repairing the disparity in hiring practices that has plagued the Springfield Police Department for years prior to the 1972 Decree.

15. Plaintiffs intend to show that the Arbitrator's Award, granted on June 25, 2004, is in direct conflict with the Consent Decree enumerated in Castro v. Beecher, 459 F.2d 725 (1st Cir.

1972), and that the implementation of the Arbitrators Award by IBPO, Local 364 unfairly and blatantly discriminates against minorities in the Springfield Police Department.

16. The Plaintiffs will show that they are a protected class, that they will suffer harm as a result of the adverse employment action taken by the IBPO, Local 364, and that the determinative cause of the adverse action taken by the IBPO was a direct result of the harbored discriminatory animus the Defendants have for the Plaintiffs in this matter.

17. Presently IBPO, Local 364, through arbitration, on April 6, 2004, has been allowed to override the Consent Decree by formulating a revised list based solely on how each individual scored on the civil service examination. (Exhibit 1, "Arbitrator's Award"). (Exhibit 3, "Revised List") (Exhibit 4, "List Before Arbitrator's Award).

18. Clearly this revised list does not follow the one-for-one alternating format set out in Castro v. Beecher. By overriding the Consent Decree, and revising the list, nearly every minority officer in the Springfield Police Department will be negatively affected. In essence minority officers will lose their seniority, thus allowing majority officers to unfairly increase their seniority.

19. The basis of the Arbitrator's Award stems from his interpretation of section 7.02 of the Collective Bargaining agreement between IBPO, Local 364 and the City of Springfield. That provision of the contract reads as follows:

> **7.02**  So far as not in conflict with the General Laws, seniority among employees who are appointed and complete recruit training academy on the same date, shall be based in the order of the civil service list from which the applicants are appointed. This paragraph shall apply to the employees appointed after July 1, 1995, and shall not affect the seniority of employees previously appointed whose seniority was computed in accordance with criteria then in effect. If this paragraph is determined to be invalid by a final determination of any court of administrative agency, the

> parties to this agreement shall commence negotiations on
> new criteria for seniority among employees who are
> appointed and complete recruit training on the same date.

20. The Arbitrator interprets section 7.02 of the contract as the leading authority for the hiring practices carried out by the Springfield Police Department. The Arbitrator briefly mentions that the "City of Springfield and its Police Department have been subject to the terms of a "Consent Decree" entered into as part of a lawsuit known as Castro v. Beecher." The Arbitrator goes on to acknowledge that the Consent Decree requires that the "Springfield Police Department engage in a hiring procedure resulting in "one for one" hiring of minorities and majorities." (Exhibit 1, p. 5). However, the Arbitrator when finding for IBPO, Local 364 clearly usurps the purpose of the Consent Decree and applies his own somewhat thwarted interpretation to this Courts Decree.

21. The Arbitrator acknowledges that the reassignment of badge numbers will predominantly advantage majority members of the Academy Classes of 1996 and 1997 in the future with respect to shift and vacation assignments, but will also advantage minority officers currently on layoff because their likelihood of being recalled would increase. (Exhibit 1, p. 18). This is not the effect the Court sought when it decided Castro v. Beecher, 365 F.Supp 655 (D. Mass. 1973). The goal to right the disparity amid the appointment of minority workers cannot be accomplished by a <u>likelihood</u> that laid off workers will be recalled. The application of the Arbitrators award does nothing to ameliorate the continuing effects of past discrimination. In fact any relief that was afforded to minorities based on "a program of color conscious relief that included priority pooling of minorities, with choices made from the priority pool until it was exhausted" will be reversed at the implementation of the Arbitrators award. See Castro v. Beecher, 365 F.Supp 655 (D. Mass. 1973).

22. The facts clearly show that the Plaintiffs have a substantial likelihood of prevailing on the merits. In sum, Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex and national origin.

23. In 1973, this Court enumerated a Consent Decree that the City of Springfield was required to follow when hiring for positions in the Springfield Police Department. Prior to this Court's Consent Decree of 1973, the Springfield Police Department had no affirmative practice when hiring minorities and was free to discriminate in its hiring.

24. On April 6, 2004, the Arbitrator awarded to IBPO, Local 364 the right to directly controvert the Consent Decree enumerated by this court. At the Unions retroactive implementation of the Arbitrators award the effect of the Consent Decree will be reversed and past discrimination practices will be allowed to flourish.

25. Due to the serious constitutional violations alleged by the Plaintiffs in their Complaint, it is imperative that a preliminary injunction, including a temporary restraining order, be issued to preserve the status quo until a quick and final determination of the validity of the badge reassignments can be made by this Court

## FACTUAL ALLEGATIONS

26. Plaintiffs hereby incorporate and adopt each and every allegation in the preceding paragraphs numbered 1 through 24.

27. Plaintiffs charge the Defendant Labor Union with discrimination on the basis of race and national origin in reassigning badge numbers of minority police officers in violation of, *inter alia,* TitleVII of the Civil Rights Act of 1964.

28. This suit seeks relief from the clear and purposeful deprivation of the Plaintiffs' rights to due process and equal protection of the laws by the Defendant, acting under the color of the

law. The case centers on Defendant's discrimination against Plaintiffs based on Plaintiffs' race, color and nationality.

29. Plaintiffs charge the Defendant Labor Union with discrimination on the basis of race and national origin in reassigning badge numbers of minority police officers in violation of, *inter alia,* TitleVII of the Civil Rights Act of 1964.

30. Plaintiffs allege that the Defendant Labor Union violated the rights of the Plaintiffs under the Thirteenth and Fourteenth Amendments to the United States Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981 and 1983.

31. After the Human Resource Department, hereafter HDR (Civil Service) administers the exam, it compiles an "eligible list" of individuals who received a passing score on the examination and who therefore are eligible for appointment to a civil service position.

32. In accord with the terms of the consent decree, HRD alternates minority and non-minority candidates on the eligible list.

33. When hiring a new class of police officers, the Springfield Police Department notifies the HRD of the number of positions it wishes to fill. HRD then certifies twice the number of persons requested plus one, selecting names from the eligible list in rank order.

34. The BPD must appoint candidates in order of their position on the certification list, unless it provides a reason for bypassing a candidate.

35. For over a quarter of a century, the hiring of police officers in the City of Springfield (the City) has taken place in the albedo of a Federal Court consent decree designed to remedy the effects of past discrimination against minorities.

36. The Arbitrator erred as a matter of law his decision, and abused his discretion.

37. We allege that the Arbitrator's decision is racially biased against African-American and Hispanic police officers and is direct violation of the <u>Castro v. Beecher</u> consent decree, approved and ordered by the United States District Court for the District of Massachusetts.

## ARGUMENT

### THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION

38. This Court should issue a preliminary injunction because Plaintiffs can satisfy the four prong test for a preliminary injunction, based on the likely unconstitutionality or illegality of the Arbitrator's Award and that the implementation of the Arbitrators Award by IBPO, Local 364 unfairly and blatantly discriminates against minorities in the Springfield Police Department.

### I.  Legal Standard for Preliminary Injunction

It is well established in this Circuit that a party is entitled to entry of a preliminary injunction by demonstrating four well known factors: (1) a substantial likelihood of success on the merits; (2) a threat of irreparable injury; (3) that its own injury would outweigh the injury to the nonmovant; and (4) that the injunction would not disserve the public interest. <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 15 (1st Cir. 1996); <u>Narragansett Indian Tribe v. Guilbert</u>, 934 F.2d 4, 5 (1st Cir. 1991).

Each of these tests is met in this case.

### II.  Substantial Likelihood of Success on the Merits

Plaintiffs strongly believe that there is a substantial likelihood that they will prevail on the merits for the following reasons. Title VII of the Civil Rights Act

of 1964, prohibits employment discrimination based on race, color, religion, sex and national origin. In 1973, this Court enumerated a Consent Decree that the City of Springfield was required to follow when hiring for positions in the Springfield Police Department. Prior to this Courts Consent Decree of 1973, the Springfield Police Department had no affirmative practice when hiring minorities and was free to discriminate in its hiring.

As discussed below, the retroactive seniority provisions contained in the Arbitrator's Award are not whole remedies for identified victims of reverse discrimination, since they confer benefits on majority employees who were not affected by the alleged disparate impact of the City's past discriminatory practices.

For the reasons set forth in this Complaint, Plaintiffs are substantially likely to be able to demonstrate that the reassignment of Springfield Police Officer's badge numbers does in fact discriminate against minority Officers in the Springfield Police Department.

This Court, in Castro v. Beecher, 495 F.2d 725 (1st Cir. 1972), set out guidelines for the nondiscriminatory hiring practice of Massachusetts police officers. The Court ordered that to ensure the [b]asic principles of compensatory relief... (4) that certification by the director of Civil Service in response to requisition requests submitted by police departments be made from the two pools of eligibles according to some ratio. Id. at 737. The Court further ordered that to

ensure the [b]asic principles of compensatory relief...that certification by the director of Civil Service in response to requisition requests submitted by police departments be made from the two pools of eligibles according to some ratio. Id. at 737. The Court then went on to state that without the cooperation of the appointing authorities in the various police forces the remedial approach could not be fully effective. Id.

It has been the past practice of the Springfield Police Department, as the hiring authority, to issue badge numbers to patrol officers by following the civil service list, which is formulated in a one-for one manner in accordance with the Consent Decree enumerated in Castro v. Beecher, 495 F.2d 725 (1st Cir. 1972). This one-for-one appointment has, to date, allowed the Springfield Police Department to begin repairing the disparity in hiring practices that has plagued the Springfield Police Department for years prior to the 1972 Decree.

Plaintiffs intend to show that the Arbitrator's Award, granted on June 25, 2004, is in direct conflict with the Consent Decree enumerated in Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972), and that the implementation of the Arbitrators Award by IBPO, Local 364 unfairly and blatantly discriminates against minorities in the Springfield Police Department.

The Plaintiffs will show that they are a protected class, that they will suffer harm as a result of the adverse employment action taken by the IBPO, Local 364, and that the determinative cause of the adverse action taken by the IBPO was a direct

result of the harbored discriminatory animus the Defendants have for the Plaintiffs in this matter.

Presently IBPO, Local 364, through arbitration, on April 6, 2004, has been allowed to override the Consent Decree by formulating a revised list based solely on how each individual scored on the civil service examination. (Exhibit 1, "Arbitrator's Award"). Clearly this revised list does not follow the one-for-one alternating format set out in Castro v. Beecher. By overriding the Consent Decree, and revising the list, nearly every minority officer in the Springfield Police Department will be negatively affected. In essence minority officers will lose their seniority, thus allowing majority officers to unfairly increase their seniority.

The basis of the Arbitrator's Award stems from his interpretation of section 7.02 of the Collective Bargaining agreement between IBPO, Local 364 and the City of Springfield. That provision of the contract reads as follows:

> **7.02** So far as not in conflict with the General Laws, seniority among employees who are appointed and complete recruit training academy on the same date, shall be based in the order of the civil service list from which the applicants are appointed. This paragraph shall apply to the employees appointed after July 1, 1995, and shall not affect the seniority of employees previously appointed whose seniority was computed in accordance with criteria then in effect. If this paragraph is determined to be invalid by a final determination of any court of administrative agency, the parties to this agreement shall commence negotiations on a new criteria for seniority among employees who are

    appointed and complete recruit training on the same date.

The Arbitrator interprets section 7.02 of the contract as the leading authority for the hiring practices carried out by the Springfield Police Department. The Arbitrator briefly mentions that the "City of Springfield and its Police Department have been subject to the terms of a "Consent Decree" entered into as part of a lawsuit known as Castro v. Beecher." The Arbitrator goes on to acknowledge that the Consent Decree requires that the "Springfield Police Department engage in a hiring procedure resulting in "one for one" hiring of minorities and majorities." (Exhibit 1, p. 5). However, the Arbitrator when finding for IBPO, Local 364 clearly usurps the purpose of the Consent Decree and applies his own somewhat thwarted interpretation to this Courts Decree.

The Arbitrator acknowledges that the reassignment of badge numbers will predominantly advantage majority members of the Academy Classes of 1996 and 1997 in the future with respect to shift and vacation assignments, but will also advantage minority officers currently on layoff because their likelihood of being recalled would increase. (Exhibit 1, p. 18). This is not the effect the Court sought when it decided Castro v. Beecher, 365 F.Supp 655 (D. Mass. 1973). The goal to right the disparity amid the appointment of minority workers cannot be accomplished by a likelihood that laid off workers will be recalled. The application of the Arbitrators award does nothing to ameliorate the continuing effects of past discrimination. In fact any relief that was afforded to minorities based on "a program of color conscious relief that included priority pooling of

minorities, with choices made from the priority pool until it was exhausted" will be reversed at the implementation of the Arbitrators award. See Castro v. Beecher, 365 F.Supp 655 (D. Mass. 1973).

The Arbitrator blatantly disregarded the HRD's certification handbook for appointed entry level police officers entitled "A Certification Handbook". The handbook clearly instructs all appointing authorities to comply with the provisions of the Castro v Beecher Consent Decree. (See Exhibit 2, p. 6 ¶ 5.)

The facts clearly show that the Plaintiffs have a substantial likelihood of prevailing on the merits. In sum, Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex and national origin. In 1973, this Court enumerated a Consent Decree that the City of Springfield was required to follow when hiring for positions in the Springfield Police Department. Prior to this Court's Consent Decree of 1973, the Springfield Police Department had no affirmative practice when hiring minorities and was free to discriminate in its hiring. On April 6, 2004, the Arbitrator awarded to IBPO, Local 364 the right to directly controvert the Consent Decree enumerated by this court. At the Unions retroactive implementation of the Arbitrators award the effect of the Consent Decree will be reversed and past discrimination practices will be allowed to flourish.

### III. Irreparable Harm Will Result Unless A Preliminary Injunction Is Issued Against the Arbitrator's Award.

As shown below, Plaintiffs will likely suffer race, color and national origin discrimination in violation of the Constitution if a preliminary injunction is not issued.

The Second requirement is that there exists the threat of irreparable injury. It is hard to imagine how a minority officer in the Springfield Police Department would not be injured if IBPO, Local 364's manipulation of the Consent Decree, enumerated in Castro v. Beecher, is allowed to proceed based on the Arbitrator's award.

The reassignment of badge numbers is a direct violation of Title VII of the Constitution and an order from the United States District Court, condoning this type of violation would cause unprecedented damage to minority officers Minority police officers in Springfield as well as the Commonwealth have fought long and hard to gain ground in achieving equality at this juncture.

If the badge numbers are allowed to be reassigned minority officers will, in essence, be stripped of their seniority and be first in line when the next round of layoffs occur in the Springfield Police Department. Additionally, these officers will lose their current vacation cycles that have taken them so long to achieve.

They will also lose their current shift assignments. These officers have spent many years suffering through undesirable shift assignments to achieve the more desirable shifts based on their seniority. The chance of these minority officers

ever regaining their current seniority will be permanently lost. In essence once badge number reassignment takes effect and officers lose their seniority they will never be able to be made whole again.

### IV. Movant's Injury Outweighs Injury To Non-Movant

Third, the movant's injury would obviously outweigh the injury to the non-movant if a preliminary injunction is not granted. If the IBPO, Local 364 is permitted to implement the Arbitrator's award the Plaintiffs' injury is final and fatal.

On the other hand, even if the temporary restraining order is granted, the non-movants are not injured. The minority and majority officers retain their status quo on the force and do not waiver in their seniority. IBPO, Local 364 would not be injured due to the fact that its contract would not be negatively impacted, but could in fact remain as it is and continue to defer to the Consent Decree for direction to the appointing authority and its part in carrying out the Consent Decree.

### V. The Public Interest Will Not Be Disserved

Finally, the issue of a preliminary injunction will not disserve the public Interest. The exact opposite will occur. If the injunction is not issued, and the implementation of the Arbitrators award goes forward, and minority police officers are discriminated against the public interest and faith will be destroyed.

The public interest in seeing the hiring of minority officers remain on a one-to-one basis is great. It is in the interest of the public to see the continued reparation of past discriminatory hiring practice in the Springfield Police Department.

By allowing the Arbitrator's Award to IBPO, Local 364 to take effect would negatively affect the officers on the Springfield Police Department. In addition, public interest would be negatively affected because minority officers would be dissuaded from applying for positions with the Springfield Police Department; thereby depleting the pool of competent individuals willing to serve on the force.

## BACKGROUND OF CONSENT DECREE

39. The plaintiffs, in <u>Castro v. Beecher</u>, challenged under 42 U.S.C. §1981 and §1983 the police hiring and recruiting practices of the Boston Police Department, the Directors of Civil Service and the Massachusetts Civil Service Commission. The plaintiffs were six black and two Hispanic-surnamed Boston residents who alleged discrimination in the dissemination of information about employment opportunities, in the use of an irrelevant education requirement, in the one-hundred yard swimming requirement, in a five-foot seven-inch minimum height requirement, and in the imposition of a discriminatory written examination.

40. United States District Judge Charles E. Wyzanski, Jr., found that of those applicants taking the 1970 civil service entrance examination, the pass rate was 65% for whites, 25% for blacks and 10% for Hispanics. The court found that the 1970 examinations were not significantly job related and gave a discriminatory advantage to white persons whose

primary language was English and who had been trained and educated in the mainstream of American society. Judge Wyzanski ruled that the entrance examination was not "rationally or empirically significantly related to the capacity of applicants to be trained for or to perform a policeman's job." Although Judge Wyzanski did not find any evidence of discriminatory intent, he held that evidence of intent was not necessary to prove an equal protection violation. The Court enjoined issuance of certificates of eligibility based on these examinations or any examination which was not significantly job-related. Finally, the court laid down guidelines which would prima facie accredit new entrance examinations as non-discriminatory and job-related. The District Court did not, however, order preferential hiring for Hispanic-surnamed and black applicants.

41. On appeal, the First Circuit affirmed the District Court's ruling that there was an equal protection violation, noting that there was a significant discrepancy between the black population of Boston in 1970 (16.3%) and the black population on the police force (2.3%). It upheld the order to develop a new examination and remanded the case, instructing the district court to create a preferential hiring plan in order to remedy the continuing effects of past discrimination.

42. On remand, the district court voiced its frustration with the public agencies. When the Massachusetts Civil Service Commission, despite the plain warning from the District and Appellate Courts, persisted in over-emphasizing "paper and pencil capacities," Judge Wyzanski wrote that the problem in Massachusetts was obvious. "When faced by an "obdurate" agency, the only practical alternative, as a last resort, is for this court to act in this situation the way courts have acted with respect to obdurate local school boards which

would not in the spirit and letter of the Constitution carry out the Constitution command to give due process and equal protection to children who were on racial grounds denied educational opportunity."

43. The District Court ultimately went beyond the scope of its original decision and enforced a consent decree which called for the preferential hiring of minorities and the maintenance of separate civil service lists. The consent decree has retained its basic structure, and is still in force under the supervision of United States District Judge Andrew A. Caffrey.

44. In December 1975, the decree specified only two groups from which future certifications of eligibility would be made. These groups provided for a one-to-one (minority to non-minority) ratio in Boston and Springfield and a one-to-three (minority to non-minority) ratio elsewhere. In 1981, Judge Caffrey amended the decree for the police force and the fire department because of a new and unforeseen condition, that is, the approval of Proposition 2 1/2, which was expected to entail a significant number of firings in both forces.

45. The Court held that it possessed the power to amend the decree where a refusal to do so would eradicate progress made with respect to minority hiring. The amended decree forbids the Police Commissioner from reducing the number of minorities below a certain percentage. This amendment overrode a state statute which provides for a strict seniority system in layoffs. The Court of Appeals affirmed.

46. **A. The selection process**
   I.   To be eligible for appointment to the City of Springfield Police Academy ("the Academy"), a candidate must take a statewide civil service examination. The

examination is administered by the Commonwealth of Massachusetts Human Resources Division ("HRD"). After HRD administers the exam, it compiles an "eligible list" setting forth those people who received a passing score on the examination (a score of at least seventy is considered passing). In accordance with the terms of the consent decree, HRD assembles the eligible list by alternating minority and non-minority candidates. All individuals on the eligible list are considered qualified for appointment to a civil service position.

II. The candidates on the eligible list are then divided into residents and non-residents of Springfield Residents, regardless of score, are ranked higher than non-residents. Within the group of residents, candidates with so-called "statutory preference" receive an additional boost on the eligible list. The categories of statutory preferences include: (1) the children of firefighters or police officers who were killed or sustained injuries that resulted in death; (2) disabled veterans; (3) veterans; and (4) widows or widowed mothers of veterans who were killed in action or died from a service-connected disability incurred in wartime service. The candidates with a statutory preference are all ranked higher than those without a statutory preference. Candidates without a statutory preference or the requisite language skills are ranked according to their scores on the civil service examination, subject to the alternation requirement of the consent decree.

III. When the time comes to hire a new class of student officers, the Springfield Police Department ("SPD") requisitions a "certification list" from HRD to fill the positions. HRD then certifies sufficient names from the eligible list available for

appointment. Starting from the top of the eligible list, and moving down in strict rank order, HRD creates the certification list by certifying roughly twice the number of persons requested by SPD. Subject to background checks on all candidates on the certification list, SPD must select candidates for appointment in order of their position on the list, starting with the highest-ranking person, unless it supplies a reason for bypassing someone. Special certification lists are also created for those candidates who qualify for a hiring preference based on their ability to speak Spanish, Vietnamese, and French-Creole. Typically, SPD hires one person for every three persons listed on the general certification list.

IV. In addition to this hiring procedure, SPD can hire new officers in three other ways. The first such mechanism is the appointment of police officers from a statutorily-created police cadets program. Second, former members of SPD who retired because of a disability may seek reinstatement to their former positions. See Mass. Gen. Laws ch. 32, § 8. And finally, the Massachusetts Criminal Justice Training Council has promulgated regulations that allow an appointing authority to recycle former recruit officers into a subsequent Academy class. See 550 Code Mass. Regs. § 3.04(1)(e).

## COUNT I

47. Plaintiff hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 48.

48. On June 25, 2004, the Defendant subjected the Plaintiffs to unequal terms and conditions of their employment and interfered with the exercise and enjoyment of Plaintiffs' civil