represent a good-faith effort to both fully understand the scope of the problem and to determine, without committing to do so, the consequences of resolving it.

In conclusion, then, on the question of waiver, I am satisfied that the nine-year failure of the City/Department to follow Section 7.02, and the Union failure over those nine years to police its own Agreement, warrant a finding in this case that balances the consequences to each party. I will address this subject again immediately after the following paragraph, which will deal with the City's "past practice" allegations.

In order for a past practice to be binding upon the parties in the future, it must first arise out of vague and/or ambiguous language. Clear contract language must always be given its clear meaning. When language is vague and/or ambiguous, arbitrators may examine past practice in an attempt to ascertain the contracting intent of the parties. For a past practice to be binding, it must be of long standing, fully known to both parties, and finally, agreed to by both parties. There is no evidence before me which would indicate that both of these parties fully understood for nine years that Section 7.02 was not being followed. There is no evidence that for nine years both parties fully agreed to continue to ignore Section 7.02. Further, Section 7.02 is neither vague nor ambiguous. Thus, there is no binding "past practice" in this case.

Given the above, I find that the answer to Issue #1 is that this case is arbitrable. While I have not accepted the City's "waiver" argument as it applies to future enforcement, I am convinced that equity requires a reasonable share of the consequences for this nine-year lapse be borne by each party. The appropriate way to allocate those consequences is by 1) establishing a date as the benchmark for any remedy, and 2) formulating a remedy that adheres to the principle that contracting parties are entitled to the fruits of their negotiation, and that parties may not receive a windfall as a result of their own inaction.

I am satisfied that the February 24, 2004 grievance is a valid grievance. It is arbitrable. I am also satisfied that February 24, 2004 is the appropriate date to establish as the boundary line for remedy purposes. In furtherance of my finding that both parties must bear the consequences of their shared inaction over nine years, I hereby find that the City violated the Collective Bargaining Agreement effective February 24, 2004, the date a grievance was filed. Clearly, the City has been in violation of the provisions of Section 7.02 since the first assignment of badge numbers under its provisions in 1996. However, this violation must be viewed as a "continuing violation," and hence the first date that I will take recognition of the violation for remedy purposes is the date the grievance was filed: February 24, 2004.

17

My decision above is based upon the language of this Collective Bargaining Agreement. Neither party has made an assertion that implementation of Section 7.02 as written would be at odds with the goal of the Consent Decree in *Castro v. Beecher*. Given the numerous references to *Castro v. Beecher* throughout the arbitration hearing, I consider it useful to examine the consequences of this decision on the two categories of Police Officers addressed in that Consent Decree, i.e., minorities and majorities. I acknowledge full well that the reassignment of badge numbers will predominantly advantage majority members of the Academy Classes of 1996 and 1997 in the future with respect to shift and vacation assignments. On the other hand, I note that the same reassignment of badge numbers will predominantly advantage minority Officers on layoff as to their likelihood of being recalled to work. Since the goal of *Castro v. Beecher* was the employment of minority officers as opposed to their vacation or shift selection priority, I am satisfied that this decision does not do trauma to that goal.

## AWARD

1) That this case is arbitrable.

2) That the City did violate Section 7.02 of the Collective Bargaining Agreement by the manner it assigned badge numbers after July 1, 1995. For reasons given in the body of this Award, February 24, 2004 will be utilized as the boundary date for remedy purposes.

## REMEDY

1) The City will reassign badge numbers effective February 24, 2004.

2) The parties will reassess any recalls occurring after February 23, 2004 in light of these newly assigned badge numbers. Any individual, with the newly assigned badge numbers pursuant to Section 7.02, who would have been recalled earlier than he/she was recalled after February 23, 2004, will be made whole for that delay in recall, less any and all outside earnings and/or unemployment compensation associated with that same period.

3) Any individual who was laid off in 2003 and, based upon the reassigned badge numbers in accordance with Section 7.02, would not have been laid off in 2003, will, if not already recalled, be immediately recalled and made whole for all losses back to the date of

18

layoff, less any and all outside earnings and/or unemployment compensation.

4) Any layoff in 2003 where the Officer was recalled prior to February 24, 2004, will not receive any remedy, even though he/she might have had a shorter layoff period under the newly reassigned badge numbers. The absence of any remedy for this group of individuals is in deference to the City's right to be protected against an excessive remedy impact when the Union failed to act on its rights for nine years.

5) Current vacation cycle assignments will not be disturbed, and newly assigned badge numbers based upon this Award will be utilized in the next vacation selection cycle.

6) Current shift assignments will not be disturbed, and newly assigned badge numbers based upon this Award will be utilized for the next round of shift assignments. The City may not avoid the consequences of this Award on shift assignments by unduly delaying the next round of shift assignments.

7) I will retain jurisdiction in this case over any questions concerning implementation of this Award.

*[signature]*

Richard G. Higgins
Arbitrator

DATED: June 25, 2004

# EXHIBIT 2

# *A Certification Handbook*

Entry Level
Police Officer Appointments
Subject to Civil Service
(Castro v. Beecher)

Civil Service Unit
Human Resources Division
One Ashburton Place
Boston, Massachusetts 02108

## CERTIFICATION INSTRUCTIONS

### CASTRO v. BEECHER CONSENT DECREE COMMUNITIES

### POLICE OFFICER

The information contained in this booklet applies specifically to municipalities in which entry level Police Officer appointments are subject to the provisions of the Castro v. Beecher Federal Consent Decree as well as to the requirements of Civil Service law and rule. Police Service Appointing Authorities are advised to review this information carefully prior to making any appointments to the position of Police Officer.

Please remember that this certification instruction packet is intended as a general guide and cannot provide complete detail on all aspects of the selection process. Appointing Authorities and Police Chiefs are encouraged to review the provisions of MGL Chapter 31, the Personnel Administration Rules and other applicable statutes and policies to insure compliance and to prevent delays or problems in appointment approval. Appointments which do not comply with the provisions of applicable law, rule and consent decrees cannot be approved by the Human Resources Division.

**Local officials are advised to retain and refer to this material until an updated version is issued.**

# TABLE OF CONTENTS

| SUBJECT | PAGE |
|---|---|
| The Certification | 1 |
| Signing the Certification | 1 |
| Certification Order | 2 |
| Applicant Marks | 3 |
| Insufficient Applicants Responding | 3 |
| Background Investigations, Reference Checking and Interviews | 3 |
| By-pass and Removal | 5 |
| Making the Selections | 5 |
| Appointment Papers | 6 |
| Return of the Certification | 6 |

| SUBJECT | APPENDIX |
|---|---|
| Personnel Administration Rules | A |
| By-pass and Removal Guidelines | B |
| Medical Examination and Physical Abilities Testing | C |
| Police Academy Dates Memorandum | D |
| Police Reserve Force Limitation | E |
| Process for Requesting Exemption from Consent Decree | F |
| Post-Appointment Smoking Prohibition | G |

**THE CERTIFICATION**

When a vacancy requisition is filed by the Appointing Authority with the Human Resources Division, a list of candidates is forwarded to the Appointing Authority. This list is called a certification.

The number of names sent out on a certification is based on the number of vacancies reported to the Human Resources Division on the requisition, Personnel Administration Rule .09 requires that the certification contain enough names to reflect at least twice the number of vacancies plus 1 (2n + 1). The Human Resources Division usually certifies names in excess of the minimum number to insure adequate response from applicants on the list.

The certification is mailed to the Appointing Authority whose name and address appear on the municipality's requisition. An original list and one copy are forwarded to the Appointing Authority. The heading of the certification summarizes primary information about the position; that is, the number and type of vacancies, the name and address of the Appointing Authority, and a statement of any required licenses which the applicant must present at the time of the interview. The Appointing Authority should take a few moments to review this information to insure its accuracy when the certification is received.

The last page of the certification contains in the lower left-hand corner the date by which the signed certification and appointments must be returned to the Human Resources Division. All processing of applicants should be completed by that date; if the Appointing Authority finds that, due to unusual circumstances, the certification cannot be returned by the due date, a written request for extension must be forwarded to the Human Resources Division, signed by the Appointing Authority and stating the reason for the delay and the length of time which will be required for its completion. Extension requests are subject to the approval of the Personnel Administrator.

At the time that the certification is mailed to the Appointing Authority, interview notices are mailed by this department to all those applicants whose names appear on the certification. The notice tells applicants to whom and where they must report to sign the certification if they wish to be considered for appointment; this information is drawn from the requisition submitted by the community. Applicants are given a specific date by which they must respond.

If the person identified as interviewer is different from the Appointing Authority, the Appointing Authority should provide the interviewer with the certification package immediately upon its receipt, to insure that applicants will have access to a list to sign when they report for interview.

**SIGNING THE CERTIFICATION**

The interviewer must insure that the original certification form **is available for signature for every applicant who may come in during the interview period indicated on the interview notice.**

Under no circumstances may the interviewer refuse to let a person whose name appears on the certification sign the list if the person has appeared within the required time period.

Each applicant who appears should be instructed to indicate on the original certification whether he or she **WILL ACCEPT** or **WILL NOT ACCEPT** the position. The applicant's signature should appear on the line directly across from his or her name and address. The Notice to Appear for the interview (Form 17) is to be retained by the applicant and does not have to be signed by the interviewer or returned to the Human Resources Division.

If under unusual circumstances applicants have received interview notices and appear to sign the list, and the list has not yet been received by the community, the applicant should be asked to write a brief statement indicating his or her interest or lack of interest in the position. This statement should be signed and dated by the applicant and attached by the interviewer to the original certification form when it is received by the Municipality. This eliminates the inconvenience to the applicant of having to return at another time to sign the certification.

**CERTIFICATION ORDER**

For those municipalities subject to the provisions of <u>Castro v. Beecher</u>, applicant names are certified in a ratio stipulated by that court order. The name of one minority applicant (identified by the letter "C" to the right of the applicant's name) is certified first, followed by the names of three non-minority applicants (identified by the letter "D" to the right of the applicants' name). Please note that under the terms of the Consent Decree, **minority is defined as Black or Hispanic.**

Within the "C" and "D" groups, the order of certification is as follows. Candidates determined eligible for resident preference are certified first, if the community has adopted applicable statutes regarding resident preference within that community. Resident disabled veterans, veterans, and non-veterans are listed in that order, based on the preferences provided in MGL Chapter 31. Within each such group applicants are listed in descending order by score. The names of nonresidents are then certified, within the appropriate "C" and "D" groups after all residents have been listed. Again, within the non-resident group disabled veterans are listed first, followed by veterans and non-veterans. Disabled veterans are identified by two asterisks; veterans by one asterisk.

In some instances, Appointing Authorities may receive a certification showing an applicant by whose name appears the legend **"402 Applicant"** or **"534 Applicant."** The provisions of Chapter 402, Acts of 1985, provide for preferred placement on the certification for initial appointment of applicants who are sons or daughters of deceased or disabled Fire Fighters or Police officers subject to those applicants having met applicable requirements of that statute.

A **534** applicant is one for whom special action has been ordered as the result of a Civil Service Commission decision. Such an applicant has been given specific placement on the certification by direction of the Commission pursuant to Chapter 534 of the Acts of 1976, as amended by Chapter 310 of the Acts of 1993.

If the vacancies being filled are permanent full-time, and the community in question has a reserve or intermittent force, certification is made first from the names of those appointed to the reserve or intermittent positions. In this instance, if there are Black or Hispanic reserve or intermittent officers, those officers will be listed in first, fifth, etc., position on the full-time certification regardless of the date of original appointment. If no minorities have been appointed to the reserve or intermittent force, the names of minorities from the current eligible list will be certified in accordance with Consent Decree ratio requirements.

The names of non-minority reserve or intermittent Police Officers will be certified in order of their seniority dates in accordance with the Consent Decree requirements. If there are insufficient names on the reserve or intermittent roster, additional names will be certified from the current eligible list.

When a certification is issued from the reserve or intermittent roster, the interview notices for those listed on that roster are mailed to the Police Chief. **It is the Chief's responsibility to insure that they are mailed, delivered or handed to the candidates in adequate time to insure their ability to be considered on the certification.** The original certification is mailed to the Appointing Authority.

**Note:** Police Service Appointing Authorities are reminded that MGL Chapter 147, Section 12 1 limits the number of Reserves allowed in any community statutorily defined as a city. Reference information is included in Appendix E.

## APPLICANT MARKS

The current provisions of the relevant consent decrees preclude printing of applicants' marks on entry level public safety certifications. Applicants within a tie group are identified by the printed words "Tie" and "Tie Ends" to the right of these names. Please note that the scores are limited to the ethnic group identified in the certification; that is, "C" candidates are tied only with other "'C" candidates and "D" candidates with other candidates from that group. Tie score applicants are listed alphabetically within their preference groups.

## INSUFFICIENT APPLICANTS RESPONDING

At the close of the interview period indicated on the Form 17, the Appointing Authority should review the response received to determine whether a sufficient number of applicants have indicated willingness to accept.

In this regard, Appointing Authorities are advised that in order to comply with the provisions of the <u>Castro v. Beecher</u> Consent Decree, particular attention must be paid to the number of minority applicants willing to accept on the certification. **There must be enough active minority candidates to be considered for existing vacancies on the basis of one minority in the first place and thereafter a minority in every fourth place on the certification.** In very rare instances the Appointing Authority may encounter insufficient non-minority candidates willing to accept. If this is the case a copy of the signed certification should be returned with a request for additional minority names.

The Appointing Authority must replace the name of any "C" candidate who fails to respond or who declines the position with the name of the next "'C" candidate who is willing to accept, so that the 1 to 3 ratio of selection consideration is maintained. All "C" candidates who are willing to accept must be moved up into "C" slots as outlined above.

In the event that an insufficient number of "C" applicants respond for existing vacancies, Appointing Authorities should send a written request for the certification of additional minority names from the Human Resources Division. Every effort will be made to expedite additional name certifications to reduce any delay in the process, but Appointing Authorities are advised that appointments made without following this procedure or without giving consideration to minority candidates according to the ratio format cannot be approved.

## BACKGROUND INVESTIGATIONS, REFERENCE CHECKING AND INTERVIEWS

The results of background investigations, reference checking, and interviews may all be used as part of the selection process at the Appointing Authority's discretion and subject to policies and procedures established locally and to general provisions of state and federal law. Complete and accurate records should be maintained of all such processes.

Candidates listed on the certification have not been reviewed for ability to acquire a gun permit or for possession of a valid Massachusetts driver's license. Possession of such permit and license is required and should be verified at the time of interview. The Human Resources Division does not check court records on public safety applicants. However, an Appointing Authority may, under limited circumstances, initiate its own inquiry as to whether or not an applicant has a court record which would legitimately affect candidacy for employment as a Police Officer. Appointing Authorities are strongly encouraged to consult with their legal staff, Town Counsel, or City Solicitor before pursuing such inquiry.

Appointing Authorities are reminded that under the provisions of MGL Chapter 41, section 101 A, no person appointed from an eligible list established as a result of an examination may smoke tobacco products after appointment. This prohibition applies to appointments made from the Police Officer eligible list established on June 7, 1988, and to all appointment made from subsequent entry-level eligible lists. (Appendix G)

Please note that the certification package contains notices for applicants regarding the no-smoking provisions. The interviewer is asked to insure that copies of these notices are provided to each candidate who appears to sign the certification. The Appointing Authority and interviewer are also asked to review carefully the information in this regard.

Medical examinations for public safety appointees are not administered by the Human Resources Division. Communities may choose to administer such medical examinations via a municipal doctor or nurse or via a contracted physician or medical group. All medical examinations must be conducted in accordance with the guidelines and requirements contained within the **HRD Physician's Guide - Initial-Hire Medical Standards** and the Initial-Hire Medical Standards for Municipal Police Officers (effective April 3, 2000.) Examining physicians must record the results of a medical examination on the HRD's Medical Examination Form included in Appendix C.

Any use of medical examination results for by-pass or removal must be based on a clear narrative statement, signed by the Appointing Authority, of the ways in which the candidate is unable to perform specific essential functions of the job. That statement should include an explanation of whether reasonable accommodation has been considered and is feasible for the candidate.

Police Officer candidates must have taken and passed the Physical Abilities Test (PAT) administered by the Human Resources Division prior to the approval of their appointments. The Appointing Authority may request the scheduling of applicants for the PAT at any time during the appointment process, but no appointments should be returned to HRD until the selected candidates have been verified as passing the test. Detailed information on the PAT schedule and the procedure for scheduling applicant names is included in Appendix C.

The use of psychological screening as a selection instrument for appointments to the position of Police Officer may be used only when a municipality has an approved psychological screening plan on file with the Human Resources Division. The results of psychological screening conducted when no approved plan is on file will not be accepted in the review or approval of appointments.

If a candidate is determined, based upon the results of an approved psychological screening plan, to be unqualified for the position of Police Officer, the Appointing Authority should return with the certification a request for removal under the provisions of PAR .09 together with a clear narrative statement signed by the Appointing Authority detailing the ways in which the candidate is unable to perform the specific essential functions of the job.

Appointing Authorities whose communities utilize a medical examination, PAT and an approved psychological screening plan must insure that such screening is initiated **only after a conditional offer of employment has been made to selected appointees, as required by MGL Chapter 151B.**

If in the course of the interview or background investigation the Appointing Authority believes that there is reason to question an applicant's right to the minority, resident, or veteran's preference indicated on the certification, a letter challenging that preference and stating the basis on which the challenge is made should be forwarded **immediately** to the Civil Service Unit. The Human Resources Division will schedule a hearing for the candidate based on the information and challenge presented by the Appointing Authority, who will be notified of

the findings. It is not advisable to wait until after selections are made and the certifications forwarded to HRD to file such challenges, since the results of the hearing may not uphold the basis on which an Appointing Authority has by-passed a candidate with preferred placement on the certification.

**BY-PASS AND REMOVAL**

Under the terms of the Consent Decree, the Personnel Administrator may not approve any appointments unless the Appointing Authority has furnished a written statement acceptable to the Administrator for rejection of any candidate whose name appears higher on the list than those selected for appointment and who signed the certification indicating willingness to accept the appointment. By-pass reasons are carefully reviewed by the Personnel Administrator and are furnished to Plaintiff's Counsel and to the candidate in question. In stating reasons for by-pass, the Appointing Authority must be **specific, factual and detailed**. Appendix B contains additional information relative to documentation of by-pass, and Appointing Authorities are urged to review these requirements carefully before submitting by-pass reasons for any candidate.

In extreme instances, an Appointing Authority may conclude that the appointment of an applicant whose name appears on an eligible list would be detrimental to public safety and to the community. Request for removal under PAR .09(2) or PAR .03 must be made in writing and accompanied by specific reasons documenting the circumstances under which the request is made. Appendix A contains more specific information relative to PAR .09 and PAR .03 removals.

The provisions of the Castro v. Beecher Consent Decree require the Appointing Authority to **notify any applicant who has indicated willingness to accept but was not appointed of the basis for his or her non-selection and of applicable appeal rights.**

**MAKING THE SELECTIONS**

Entry level public safety appointments must be made in accordance with the provisions of Personnel Administration Rule .09, a copy of which is included in this booklet for your reference in Appendix A. PAR .09 requires appointments to be made within the formula of twice the number of vacancies plus one; that is, if three appointments are being made, the appointments must be made from among the first seven people willing to accept; if ten appointments are being made, from among the first twenty-one willing to accept, and continuing in accordance with that formula.

Applicants with tie scores are listed alphabetically within their tie groups on the certification. If one applicant within a tie group is reachable under the provisions of PAR .09, any applicant with that score and certified within that tie group may also be reached. As an example, if three vacancies are to be filled, the appointments must be made from among the top seven willing to accept. Candidate number seven on the certification is shown as having a tie score with candidates number eight and nine. In this instance, the Appointing Authority could choose to appoint the ninth candidate and still remain within the requirements of the Personnel Administration Rules. This expansion of the provisions of the rule occurs only when the last person normally reachable under its provisions begins or continues a tie score.

The certification packet contains a PAR .09 worksheet called a Form 16II. All applicants willing to accept appointment should be listed on this worksheet in the order in which they appeared on the certification **(or in accordance with the ratio provisions of Castro v. Beecher if it has been necessary to move "C" candidates higher on the certification)**. Reference to the worksheet will then provide you with an easy visual assessment of those candidates who are reachable under the provisions of PAR .09. The completed worksheet should be signed and returned with your report on certification and appointment papers.

When you have listed on the worksheet the names of all candidates who signed the original certification indicating their willingness to accept, make sure that minorities have been moved up as necessary to insure compliance with Consent Decree requirements. Then please indicate in the right-hand column of the worksheet and on the signed certification those who have been selected for appointment.

Review the form to insure that the appointments as projected fall within the requirements of PAR .09. Next, insure that for each person who is listed higher on the certification but was not selected one of the following pieces of documentation is prepared and attached: (1) a letter of declination or withdrawal from the candidate or signed memorandum of the conversation during which declination or withdrawal was officially relayed; (2) individual narrative reasons for by-pass of such candidates, signed and dated by the Appointing Authority, substantiating the specific reasons for the by-pass request; or (3) a narrative statement, signed and dated by the Appointing Authority, specifying the reasons for any removal request made under the provisions of PAR .03 or PAR .09.

**APPOINTMENT PAPERS**

When all local review has been completed and the final selections of candidates is made, and the Appointing Authority has insured that all provisions of civil service law and rule and of the Consent Decree have been met, **the names, social security numbers, dates of birth, addresses, and effective dates of employment are typed on the Authorization of Employment Form 14** which is included with the certification package. Please note that the effective date of employment shown on that form may not in any case precede the date of the certification.

Personnel Administration Rule .09 requires that an appointee must actually be employed in the position within 30 days of the appointment. Because permanent full-time Police Officers must participate in Basic Police Recruit Training at the Police Academy, and because available academy openings may be limited, a separate policy has been developed to allow for police appointments which must be postponed due to academy enrollment. A detailed description of this process is contained in Appendix D.

**RETURN OF THE CERTIFICATION**

After the local appointment processing is completed, the Appointing Authority should return the following materials to the Civil Service Unit:

1. The original certification list, signed by the applicants and by the Appointing Authority.

2. The completed Form 16II (Report on Certification) on which the names of all applicants willing to accept are listed in the order in which they appeared on the certification or in required Consent Decree format if "C" candidates have been moved up, and identifying those applicants selected for appointment.

3. A completed Form 14 (Appointment Form), signed by all appointees and by the Appointing Authority, and containing the effective dates of appointment.

4. Any letters of declination or withdrawal received from applicants.

5. Written reasons, signed by the Appointing Authority, for requesting the by-pass or removal of candidates willing to accept and higher on the list than those selected.

6. Letters of appointment for those appointees whose academy dates are more than thirty days away. (Appendix D)

All materials should be returned in one package to the Human Resources Division, One Ashburton Place, Room 301, Boston, MA 02108, Attn: Civil Service Unit.

# APPENDIX A

## PERSONNEL ADMINISTRATION RULES

(CREATE LINK TO PAR'S) http://www.hrd.state.ma.us/employment/examinations.htm

# APPENDIX B

## BY-PASS AND REMOVAL GUIDELINES

The Human Resources Division has received a number of inquiries regarding the appointment standards to be used in selecting applicants for appointment to Civil Service positions. Additionally, there appears to be some confusion regarding by-pass reasons for police and fire forces covered by the federal court consent decrees and, in particular, the use of criminal records. Finally, legislation was passed this past year concerning the use of lie detector examinations in the employment context which affects all appointing authorities. This document will address each of these areas.

Reasons for Selection

M.G.L. Chapter 31, Section 27, requires appointing authorities to provide written reasons for the selection of any individuals other than those highest on the list. Such reasons must be provided with the returned certification and will be reviewed by the Human Resources Division.

As a guideline, you may wish to consider the following categories of information in the evaluation and preparation of your written documentation.

1. Good prior work performance as indicated by references and statements from previous employers, including, when available, awards and certificates of recognition demonstrating such positive attributes as reliability and outstanding performance.

2. Specific examples of accomplishments or skills in past job performance which appear to be predictive factors of ability to perform in the job for which the applicant is being considered.

3. Results of the interview process, specifically indicating ways in which an applicant displayed skills, communicative or otherwise, which are required on the job.

4. Personal characteristics evaluated during the course of the interview background investigation, and reference checking, such as self-control, community relations and ability to get along with others.

5. Exhibition of commitment to the type of work involved shown through the applicant's choice of paid or volunteer activity over a significant time period. In the case of public safety positions, assistance with community social services, public protective agencies or rescue operations may also be used if detailed and related by the appointing authority to the requirements of the position.

6. Directly related experience in the community in the relevant position is acceptable if that experience has been after certification rather than on a provisional basis.

The above list is not intended to be exclusive. The duties of the position sought should indicate to the appointing authority those qualities which are job-related and thus may be considered. Such attributes may be the basis for valid selection by the appointing authority as long as they are applied equally and consistently to all applicants involved in the selection process.

Finally, negative comments concerning the individuals higher on the list than the person selected will not be accepted as selection reasons. Selection reasons must address positive job-related reasons for selecting the individual who is being appointed.

Reasons for By-pass

Appointing authorities which are subject to the provisions of the federal consent decrees NAACP v. Beecher and Castro v. Beecher in the appointment of entry-level Police officers or Fire Fighters are required by the provisions of those decrees to provide written reasons for the by-pass of any applicant higher on the list than other applicants selected for appointment.

As you can understand, it would be highly inappropriate for this agency to provide appointing authorities with a list from which they may pick, choose, and quote reasons for bypassing applicants.

For guidance in insuring the compliance and understanding of appointing authorities with the provisions of the decrees, however, it should be noted that reasons for by-pass which are not specific and documentable as falling into one of the following categories may be determined unacceptable by the Human Resources Division. It is essential that any reason submitted for by-pass must be specifically related by the appointing authority to the knowledges, skills, abilities and requirements of the specific public safety position in question.

1. The results of any interview process may be sufficient reasons for by-pass if the appointing authority is specific as to the nature of the problem which occurred during the course of the interview. Simply saying that someone did not perform well, or as well as another applicant during the course of the interview is not sufficient. General comments explaining the ways in which specific applicants did not perform well during the course of the interview may provide sufficient reasons for by-pass.

2. Information obtained from the background investigation indicating the references from previous employers were poor, i.e., frequent absenteeism, poor performance, termination for cause, abandonment of job, poor military record, or other such reasons may be sufficient for by-pass.

3. A statement from the appointing authority documenting that the background check has shown a pattern of conduct in community life which indicates an unsuitability for public safety work. For example, documented instability, occasions of violent, uncontrolled behavior or unreliability-may be the basis for by-pass, as may documentation of a poor military record or substantive verification that an applicant has exhibited a disregard for the law, immaturity, irresponsibility, or poor judgment in ways which would relate to the candidates' suitability for the position of Police Officer of Fire Fighter.

4. Applicants may be by-passed on a certification if they:

    a. Refuse to complete a uniformly administered request for information such as a local application form;

    b. Indicate during the interview, and there is a record to substantiate, that he or she is not available to work the shifts required or that he or she will not follow through with taking courses required after employment as a condition of employment established by the appointing authority.

10

Applicants who are by-passed on a certification for any of the above or other reasons must be included by the appointing authority in the completion of the Report on Certification (Form 16 II) listing those willing to accept, and must be counted in the selection formula established by PAR.09.

In any instance where an applicant is by-passed on a certification, appointing authorities should carefully review the reasons provided to insure their compliance with the requirements of the law and of the decrees. It is essential that all practices, standards, and procedures be administered equally to all applicants. Appointing authorities must also remember that reasons submitted for by-pass will be forwarded to the applicant(s) by the Human Resources Division in compliance with PAR .08(3). The applicant(s) may appeal to the Civil Service Commission if they believe the reasons provided are untrue, invalid, or pretextual. Documentation supportive of such reasons in the course of an appeal is the responsibility of the appointing authority.

Appointing authorities at times request removal of applicants from a certification under the provisions of PAR .09(2) (formerly Civil Service Rule 15.2). As with reasons for by-pass, requests for such removal are carefully reviewed by the Personnel Administrator and are subject to even more stringent guidelines and constraints. Appointing authorities are advised that such removal should be requested only when substantive documentation exists that such an appointment would be detrimental to the public safety force.

Criminal Records

Information on an applicant's criminal record is often submitted to support a by-pass or removal request for Police officer and Fire Fighter positions. The Human Resources Division reviews such requests carefully and conducts an independent criminal records review. While there are no hard and fast rules about criminal records, the following should provide some guidance in this area.

1. Because persons convicted of felonies cannot obtain gun permits in Massachusetts, conviction of a felony is always grounds for removal for the position of Police Officer. Conviction of a felony will in most cases be grounds for removal for the position of Fire Fighter, as well as a reason for by-pass.

2. Conviction of a misdemeanor is often, but not always, grounds for by-pass and would not be grounds for removal. The nature and gravity of the misdemeanor, the length of time since conviction and the number of convictions are all factors in a by-pass decision.

3. If an applicant has been charged with a felony and the case has been continued without a finding there may be grounds for removal in the situation where the charges are still pending. The nature of the charge, the time involved, and the extent of other convictions or pending charges would all be factors.

4. A charge of a misdemeanor which has been continued without a finding would not be grounds for removal but might be grounds for bypass. Again, the factors discussed above must be considered.

5. An outstanding warrant for the applicant's arrest will be grounds for bypass where the warrant is brought to the applicant's attention and he or she refuses to deal with it. Removal may be appropriate depending on the factors discussed above and therefore where the warrant is for a felony or a misdemeanor is a factor. The state issuing the warrant and the age of the warrant would not be significant factors if the warrant remains outstanding.

11

6.  "Incidents" which are found in the department's internal records can be grounds for bypass but are not considered to be based on criminal records. Instead they are more analogous to decisions based on a poor employment record. The date of the incident is relevant in this regard.

As with selection and by-pass reasons in general, the use of criminal record information as the basis for by-pass or removal must be applied in a consistent manner to all applicants.

Lie Detector Test - Employment Applications

Pursuant to a recent amendment to MGL Chapter 149, section 19b, all applications for employment in Massachusetts as of September 30, 1986 are required to state the following:

It is unlawful in Massachusetts to require or administer a lie detector test as a condition of employment or continued employment. An employer who violates this law shall be subject to criminal penalties and civil liabilities.

The Human Resources Division will include this language on all of our applications for Civil Service employment. Many appointing authorities, however, also use their own application forms as part of the appointment process. The law requires that the language also be included on those forms as of September 30, 1986.

12

# APPENDIX C

## MEDICAL EXAMINATIONS & PHYSICAL ABILITIES TEST (PAT)

### MEDICAL EXAMINATIONS

Initial-Hire Medical Examinations for Massachusetts Municipal Firefighters must be conducted in accordance with the guidelines and requirements of HRD's Physician's Guide - Initial Hire Medical Standards for Municipal Firefighters. Copies of the Medical Standards and the Medical Examination form are available on HRD's website at: http://www.hrd.state.ma.us/employment/EM_PAT/PAT_candidate_information%20.htm.

HRD medical examinations for public safety appointees are valid for 6 (six) months. In the event that an appointee fails his or her medical examination he or she has the right to appeal this failure to HRD or undergo a second medical examination (subject to prior-approval of HRD). For further information concerning the medical examination process or the Initial-Hire Medical Standards, please contact Kristen Bluemmel, Senior Personnel Analyst at (617) 727-3777, extension 507.

### PHYSICAL ABILITIES TEST

The Human Resources Division (HRD) conducts Physical Abilities Testing for firefighter candidates on a regular basis at multiple National Guard Armories across Massachusetts. Appointing authorities must schedule each candidate's PAT previews and tests in advance with HRD staff. HRD will not allow candidate's to schedule themselves for a PAT preview or test.

The appointing authority must ensure that prior to schedule a Physical Abilities Test (PAT) preview or PAT test for a candidate, the individual must have successfully passed a medical examination, and the appointing authority has forwarded pages 1 and 6 of the completed and signed Medical Examination Form to the Human Resources Division. Candidates appearing for a PAT who have not been scheduled in advance with HRD will not be allowed to preview or test. Please note that PAT's and Previews may be subject to postponement if an insufficient number of candidates are scheduled to participate.

All candidates who have been schedule for a PAT preview must bring positive photo I.D. PAT previews are available at no charge. All candidates schedule for a PAT test must bring positive photo I.D., and a $50.00 bank check or money order made payable to the Commonwealth of Massachusetts (for the test date only.)

PAT results are valid for 6 (six) months. In the event that an appointee fails his or her PAT, he or she may attempt to 1 (one) re-test of the PAT. This is no appeal of a failure of a PAT.

Directions to HRD's firefighter PAT sites, and the current PAT test and preview schedule are available on HRD's website at: http://www.hrd.state.ma.us/employment/EM_PAT/FY2003_Interim_Schedule.xls. HRD asks that you contact Phil Ierardi, Senior Personnel Analyst, at (617) 727-3777 extension 504, if you wish to schedule a PAT test or preview, or if you have any questions regarding the PAT itself.

13

14