# In The United States District Court
# For The Western District of Massachusetts

**CIVIL ACTION NO.: 04-CV-30163-MAP**

**Julio Toledo Jr.,et. al**

**PLAINTIFFS**

v.

**IBPO, Local 364,**

**DEFENDANT**

v.

**Springfield Police Department,**

**DEFENDANT**

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**TO THE HONORABLE PRESIDING JUDGE:**

1.   This is an action by Plaintiffs union members against their labor union, International Brotherhood of Police Officers, Local 364, hereinafter referred to as IBPO, Local 364, based upon breach of the duty of fair representation.

2.   A civil action was originally brought by Plaintiffs in August 24, 2004 against Defendant IBPO, Local 364.

3.   The original complaint did not name Defendant City of Springfield Police Department. Now that it is clear that this civil action will not be resolved without the City of Springfield, Plaintiffs bring an action to enjoin the Defendant City of Springfield Police Department, their agents, servants and employees and those acting in active concert and with actual notice there of, from enforcing the Arbitrator's Award, granted on June 25,

2004, which, is in direct conflict with the Consent Decree enumerated in *Castro v. Beecher*, 334 F. Supp. 930 (D. Mass. 1971), *aff'd*, 459 F.2d 725 (1st Cir. 1972); *Boston Chapter NAACP v. Beecher*, 371 F. Supp.507 (D. Mass.1974), *aff'd*, 504 F.2d 1017 (1st Cir. 1974).

4.  Unless Defendant City of Springfield Police Department is immediately enjoined, it will begin reassigning badge numbers in direct conflict with this Courts 1973, Consent Decree enumerated in *Castro v. Beecher*, 365 F.Supp. 655 (D. Mass. 1973), and the City of Springfield will undermine the effect this Court intended when deciding *Castro v. Beecher*.

5.  Plaintiffs pray for Declaratory Judgment to determine the constitutionality of the actions of the Arbitrators Award in exercising jurisdiction over the *Castro v. Beecher* case and in reassigning badge numbers..

## JURISDICTION AND VENUE

6.  This Court has Federal Question Jurisdiction over Plaintiff's claim to vacate the Arbitrator's Award because the award was rendered in manifest disregard of federal law. When the petitioner complains principally and in good faith that the arbitration award was rendered in manifest disregard of federal law, a substantial federal question is presented and the federal courts have jurisdiction to entertain the petition. *Greenberg v. Bear, Stearns & Co.*, 220 F. 3d 22, 27 (2nd Cir 200), cert denied, 531 U.S. 1075 (2001).

7.  It is well established that this Court is not prohibited from entertaining a claim that a union has (1) breached its duty of fair representation or (2) violated the LMRDA. *Vaca v. Sipes*, 386 U.S. 171 (1967); *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233(1971).

8.  Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202 implemented through Rule 57 of the Federal Rules of Civil Procedure.

9. One or more Defendants reside in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Venue is therefore proper in the United States District Court for the Western District of Massachusetts pursuant to 28 U.S.C. *1391(b).

## PARTIES

10. Plaintiffs are and were at all times relevant herein, individuals and residents of Hampden County Massachusetts and are police officers of the Springfield Police Department.

11. Plaintiffs are minority Springfield Police Officers. (See Affidavits)

12. Defendant IBPO, Local 364, is and was all times relevant herein, a resident of Hampden County Massachusetts and is the recipient of the Arbitrator's Award granted on June 25, 2004.

13. Defendant City of Springfield Police Department is and was all times relevant herein, a resident of Hampden County Massachusetts and is the entity responsible for enforcing the Arbitrator's Award granted on June 25, 2004.

## FACTS

14. Due to previous practice of discrimination against African-Americans and persons with Hispanic sir names, the Springfield Police Department must hire candidates who are African American and persons with Hispanic sir names ahead of other candidates even if those other candidates' names appear higher on the list than that of the selected applicant.

15. In accordance with *Castro v. Beecher*, 334 F. Supp. 930 (D. Mass. 1971), *aff'd*, 459 F.2d 725 (1st Cir. 1972); *Boston Chapter NAACP v. Beecher*, 371 F. Supp.507 (D. Mass.1974), *af'fd.*, 504 F.2d 1017 (1st Cir. 1974), the city of Springfield must give special preference to racial minorities who apply to become police officers.

16. Plaintiffs have spent many years suffering through undesirable shift assignments to achieve the more desirable shifts based on their seniority. The chance of these minority officers ever regaining their current seniority will be permanently lost. In essence once badge number reassignment takes effect and officers lose their seniority they will never be able to be made whole again.

17. Redistribution of badge numbers for the purpose of seniority by the appointing authority, the city of Springfield Police Department, violates the certified list established for Public Safety candidates generated by HRD Civil Service Unit in compliance with the ratios set forth by the stipulated court order of Castro v. Beecher (Police) Federal Consent Decree.

18. The Departments has not yet met the minority employment percentage goals (parity) set forth in the Consent Decrees.

19. The appointing authority (City of Springfield Police Department) must petition the State's Chief Human Resources Officer to be exempt from the stipulated court order outlining the hire of entry level Police Officers. An arbitrator has no jurisdiction.

20. The ruling this year by the United States Court of Appeals, First Circuit, in the matter of Quinn v. City of Boston and the NAACP has made it clear that a municipality should petition to be exempt from the Consent Decree once the Department has achieved parity. The population of the Springfield Police Department is approximately 29% minority to 71% majority.


## CLAIM

21. Due to an Arbitration Award, the City of Springfield Police Department will begin reassigning badge numbers in November 2004 to Springfield police officers hired in 1996, 1997, and 1998.

22. Plaintiffs; assert that Defendant IBPO, Local 364 owed them a duty of fair representation and that it breached that duty in representing one white officer in an arbitration that

4

impermissibly and unlawfully disregarded *Castro v. Beecher* consent decree. A Breach of
the duty of fair representation occurs if a union's actions toward an employee are "arbitrary,
discriminatory, or in bad faith." *Vaca* v. *Sipes*, 386 U.S. 171, 190 (1967)

23. Plaintiff's allege that the Defendant IBPO, Local 364 breached its statutory duty of fair
representation when it discriminated in bad faith by representing a white officer in
arbitration that stripped Plaintiffs of their seniority.

24. Plaintiffs who are minority police officers are members of IBPO, Local 364 and are being
stripped of their seniority via a grievance brought forth by the Union on behalf of a non
minority union members

25. Plaintiffs who are minority police officers are members of IBPO, Local 364 and are being
made to give up their seniority to majority union members.

26. Redistribution of badge numbers for the purpose of seniority by the appointing authority,
the city of Springfield Police Department, violates the certified list established for Public
Safety candidates generated by HRD Civil Service Unit in compliance with the ratios set
forth by the stipulated court order of Castro v. Beecher (Police) Federal Consent Decree.

27. The Departments has not yet met the minority employment percentage goals (parity) set
forth in the Consent Decrees.

28. The appointing authority (City of Springfield Police Department) must petition the State's
Chief Human Resources Officer to be exempt from the stipulated court order outlining the
hire of entry level Police Officers.  An arbitrator has no jurisdiction.

29. The ruling this year by the United States Court of Appeals, First Circuit, in the matter of
Quinn v. City of Boston and the NAACP has made it clear that a municipality should
petition to be exempt from the Consent Decree once the Department has achieved parity.
The population of the Springfield Police Department is approximately 29% minority to
71% majority.

30. The Human Resources Division (HDR) in Boston holds examinations for those applying for police officer positions. Those applicants with scores of seventy or above have their names put on an eligible list.

31. When an appointing authority (in this case the Springfield Police Department) has a vacancy to be filled, the department files a requisition with the Personnel Administrator.

32. In accordance with *Castro v. Beecher*, HRD will take names from two lists, minority and non-minority, in alternation to make up one certification list *(See Exhibit A)*

33. The Personnel Administrator will then send a certified list of names to the Springfield Police Department. *(see Exhibit A)*

34. After the certification list is issued to the appointing authority in accordance with *Castro v. Beecher*, all the applicants whose names are on that list are notified by postcard to report and sign the certification list to indicate their continued interest in employment.

35. If an individual does not sign the certification list, he or she will be eliminated from the hiring process.

36. Once an individual signs the certification list, he or she will remain as a candidate and continue with the hiring process.

37. The appointing authority must make a selection from among those who signed and passed background investigations and interviews.

38. Candidates will be disqualified for various reasons, failing drug tests, background checks, psychological exam, etc.

39. As candidates are disqualified due to reasons stated above, the remaining selected candidates on the list could potentially list two or three candidates consecutively who are of the same ethnicity. *(see Exhibit B)*

40. Once the Springfield Police Department has indicated whether individuals have been selected from the certification list, it will create a new list in conformance with *Castro v. Beecher* indicating persons appointed to the Springfield Police Department *(see exhibit C)*

The City of Springfield is instructed to do this at the bottom of the list referred to as *Exhibit B*. All three lists will then be sent to HRD.

41. The Springfield Police Department will then notify candidates that they have been selected into police academy, to serve as a police officer upon graduation.

42. The Springfield Police Department uses badge numbers for, amongst other purposes, determining seniority amongst police officers.

43. The Springfield Police Department issues badge numbers to newly appointed police officers in the order by which officers appear on the appointed civil service list in conformance with *Castro v. Beecher. (see exhibit C).*

44. The lower the officers badge number is, the more seniority she has. For instance, an officer with badge #1 will be senior to the officer with badge #10.

45. Seniority is the determining factor in circumstances including, but not limited to, shift preference, vacation time, and most importantly, the possibility of layoffs.

46. Badge numbers are distributed among officers in the order by which they are appointed.

47. The list from which officers are appointed is the final list that is submitted from the City of Springfield, to the Human Resources Division in Boston. *(see exhibit3)*

48. This final list is formulated in a "one for one" manner in accordance with the intent of the consent decree. Thus rearranging the names on the list is a violation of Castro v. Beecher.

49. This issue of badge changes was brought before the Board of Police Commissioners, who unanimously voted against changing the seniority lists and voted against sending the issue to arbitration.

50. This civil service list *(exhibit C)* lists officers alternating in a one-for-one manner, in accordance with the *Castro v. Beecher* federal consent decree.

51. The Defendant IBPO, Local 364 argues that the language in the contract between the City of Springfield and the Police Department Union, local 364, refers to *exhibit B* as the list used for determining seniority.

52. The list referred to as *exhibit B* does not list selected candidates in a one-for-one manner, thus using this list would be in violation of the *Castro v. Beecher* federal consent decree.

53. Clearly this list *(exhibit B)* does not follow the one-for-one alternating format set out in *Castro v. Beecher.* Because individuals of the same ethnicity/race are listed consecutively. By overriding the Consent Decree, and implementing the list referred to as *exhibit B*, nearly every minority officer in the class of 1996 and 1997 will be negatively affected. In essence minority officers will lose their seniority, thus allowing majority officers to unfairly increase their seniority. *(See Exhibit F for illustration of paragraphs 25 – 42)*

54. HRD published guidelines entitled "A Certification Handbook" issued to appointing authorities in the State of Massachusetts that are subject to *Castro v. Beecher* consent decree. The handbook clearly instructs all appointing authorities to comply with the provisions of the *Castro v Beecher* Consent Decree. *(See Exhibit E, p. 6 ¶ 5.)*

55. Prior to this Courts Consent Decree of 1973, the Springfield Police Department had no affirmative practice when hiring minorities and was free to discriminate in its hiring.

56. The basis of the Arbitrator's Award stems from his interpretation of section 7.02 of the Collective Bargaining agreement between IBPO, Local 364 and the City of Springfield. *(Exhibit G)*

57. Plaintiff's argue that the civil service list from which the applicants are appointed would be the final list. *(see exhibit C).*

58. The Arbitrator interprets section 7.02 of the contract as the leading authority for the hiring practices carried out by the Springfield Police Department. The Arbitrator briefly mentions that the "City of Springfield and its Police Department have been subject to the terms of a Castro v. Beecher consent decree. The Arbitrator goes on to acknowledge that the Consent Decree requires that the "Springfield Police Department engage in a hiring procedure resulting in "one for one" hiring of minorities and majorities." *(Exhibit D, p. 5).* However,

the Arbitrator when finding for IBPO, Local 364 clearly usurps the purpose of the Consent

Decree and applies his own somewhat thwarted interpretation to this Courts Decree.

59. The Arbitrator acknowledges that the reassignment of badge numbers will predominantly

advantage majority members of the Academy Classes of 1996 and 1997 in the future with

respect to shift and vacation assignments, but will also advantage minority officers

currently on layoff because their likelihood of being recalled would increase. *(Exhibit D, p.*

*18).* This is not the effect the Court sought when it decided *Castro v. Beecher*, 365 F.Supp

655 (D. Mass. 1973). The goal to right the disparity amid the appointment of minority

workers cannot be accomplished by a likelihood that laid off workers will be recalled. The

application of the Arbitrators award does nothing to ameliorate the continuing effects of

past discrimination. In fact any relief that was afforded to minorities based on "a program

of color conscious relief that included priority pooling of minorities, with choices made

from the priority pool until it was exhausted" will be reversed at the implementation of the

Arbitrators award. See *Castro v. Beecher*, 365 F.Supp 655 (D. Mass. 1973)..

60. Plaintiffs assert that Defendant IBPO, Local 364 was aware that its decision to represent a

white officer in arbitration that would cause injury to minority officers by stripping them of

their seniority.

61. Defendant IBPO, Local 364 was also mindful that their actions to represent a white officer

in arbitration would cause great hostility within the police department, thereby

intentionally causing hostility within the work place.

62. When the Defendant IBPO, Local 364 chose to represent a white officer in supersede a

long standing federal consent decree, it intentionally created great hostility and strife within

the department.

63. The Plaintiffs, class of 1996 and 1997, minority police officers will drop to the bottom end

of the seniority list, white majority officers will graduate to the top of the list.

64. The Plaintiffs, class of 1996 and 1997, minority police officers whose job was once safe from being laid off, are now in serious and immediate danger of losing their jobs due to the fact that they have lost their seniority.

65. The Plaintiffs, class of 1996 and 1997, minority police officers presently employed and could be forced to be laid off.

66. As a result of this Arbitration Award, there are also officers who are presently laid off who should have never been laid off to begin in.

67. The Plaintiffs, class of 1996 and 1997, minority police officers will lose their preference in vacation time, and will be forced to remain on undesirable shifts for longer periods of their career.

## CLOSING

The Castro v. Beecher consent decree was not designed to give an unfair advantage to minorities. Instead it was designed to level the playing field and to open door of opportunity to minorities where there once was non. It was designed to create a diverse working environment that would benefit the community, and to make the manpower of the department reflect the numbers of the community that it serves. A change of this magnitude will have an adverse impact on minoriti8es who sere the public trust.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court grant the following relief:

A. That this Court immediately issue a preliminary and permanent injunction against Defendant City of Springfield Police Department and all other persons acting in concert with them, enjoining the enforcement of reassigning Springfield Police Officers' badge numbers..

B. That this Court render a Declaratory Judgment:

    (1) Declaring the Arbitrator exceeded his authority in finding for Defendant
IBPO, Local 364.

    (2) Declaring that the Arbitrator exceeded his authority in exercising
jurisdiction over this Court by usurping the clear intent of <u>Castro v.
Beecher</u> consent decree.

    (3)  Declaring that the Defendant IBPO, Local 364 award unlawfully
discriminate against Plaintiffs based on race, color and nationality.

C.  That this Court adjudge, decree, declare the rights and other legal relations with the subject matter here in controversy in order that such declaration shall have the force and effect of final judgment.

D.  That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order.

E.  That this Court award Plaintiffs the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. §1998.

F.  That this Court enter judgment in their favor against Defendant in an amount the amount of sixteen million dollars ($16,000,000.00) for conscious pain and suffering and all other damages recoverable together with interest, costs and such other relief as this Honorable Court may deem appropriate.

G.  That this Court grants such other and further relief as this Court deems equitable and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on each claim asserted or hereafter asserted in the Complaint, and on each defense asserted or hereafter asserted by any Defendant.

DATE:  OCTOBER 22, 2004

Respectfully submitted,

**ATTORNEY FOR PLAINTIFFS**

Tammy Sharif
BBO#: 6591334
Attorney For Plaintiffs
The Walker Building
1242 Main Street, Suite 314
Springfield, MA  01103
Telephone: (413) 439-0200
Facsimile:  (413) 785-0801

## CERTIFICATE OF SERVICE

**The undersigned hereby certifies** that a true copy of the within First Amended Complaint was this day served upon all parties to this action by mailing same, first class postage prepaid to all Attorneys of record.

SIGNED under the pains and penalties of perjury.

DATE:  OCTOBER 22, 2004

Respectfully submitted,

**ATTORNEY FOR PLAINTIFFS**

Tammy Sharif
BBO#: 6591334
Attorney For Plaintiffs
The Walker Building
1242 Main Street, Suite 314
Springfield, MA  01103
Telephone: (413) 439-0200
Facsimile:  (413) 785-0801