UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Civil Action No. 04-30613-MAP




JULIO TOLEDO, ET AL
Plaintiffs

v.

IBPO LOCAL 364
Defendant

OPPOSITION OF THE DEFENDANT IBPO LOCAL 364 TO
PLAINTIFFS' APPLICATION FOR INJUNCTIVE AND DECLARATORY
RELIEF, INCLUDING TEMPORARY RESTRAINING ORDER

Now comes the Defendant IBPO Local 364 and opposes the Plaintiffs' application for injunctive relief.

I. BACKGROUND.

The Defendant Local 364, International Brotherhood of Police Officers is the exclusive representative (union) of a bargaining unit comprised of all full time, permanently appointed, non-supervisory police officers employed by the City of Springfield Police Department, duly organized according to the provisions of G.L.c. 150E. The bargaining unit is presently comprised of approximately three hundred seventy-five police officers, all of whom are members of Local 364. Local 364 has for many years negotiated collective bargaining agreements (CBAs) with the City of

Springfield establishing various wages, hours and other terms and conditions of employment for members of Local 364. Those CBAs, including the one in effect at all times relevant to this matter, include a provision whereby Local 364 and the City have agreed that their disputes regarding the interpretation and application of the CBA will be resolved by a grievance procedure culminating in binding arbitration.

In 2003 a dispute arose between Local 364 and the City regarding the relative seniority of certain police officers appointed after July 1, 1995. The dispute involved the assignment of badge numbers to three groups of police officers which were each appointed on the same date. The CBA provides in §7.02 that for police officers appointed on the same date, seniority (badge number) will be based on the appointees' position on the Civil Service list from which they were appointed.

After attempts by Local 364 and the City to resolve the matter by agreement failed, the dispute was submitted to arbitration according to the terms of the CBA. Arbitrator Richard Higgins made an award wherein he found that the City had assigned badge numbers in violation of the CBA, and directed the City to reassign badge numbers in accordance with the CBA. The City is required by statute to implement the Higgins award. G.L.c. 150E, §§1, 10; G.L.c. 150C, § 8.

The Plaintiffs seek to enjoin the City from implementing with the Higgins award. They assert that implementation will result in unlawful employment discrimination, violate the terms of the *Castro v. Beecher* consent decree, and breach Local 364's duty of fair representation.

2

## II. ARGUMENT.

### A. The Plaintiffs cannot have review of the arbitration award.

The Plaintiffs offer as part of their memorandum in support of the issuance of a preliminary injunction, numerous documents, and make various arguments, imploring the court to overrule Arbitrator Higgins in his findings of fact, conclusions of law, and his interpretation of the CBA. This court has no jurisdiction or authority to review the award. It can only determine if its implementation would cause unlawful discrimination, which is discussed in more detail below.

As municipal employees, the Plaintiffs and Local 264 are not subject to the Labor Management Relations Act, 29 U.S.C. §185, and thus the normal appeal process of arbitration awards by private sector employees and employee organizations to the federal court is unavailable to the Plaintiffs. Review, if any, of Arbitrator Higgins' award must be pursuant to G.L.c. 150C, §§ 8, 11. Such review is limited to parties, *Miller v. Board of Regents of Higher Education*, 405 Mass. 475, 480 (1989), and must be filed within thirty days of receipt of the award. Individual union members have no standing to seek judicial review of an arbitration award, but have only the right to assert that the union breached its duty of fair representation. *Id.* The Plaintiffs are not parties[1], and did not file within thirty days of the issuance of the award. In reviewing arbitration awards, Massachusetts courts have conformed to the principles of the *Steelworkers* trilogy, and uniformly refused to review arbitration award if the arbitrator was acting pursuant to a CBA and within the scope of his authority. Even errors of law, or obvious misinterpretations of the CBA will not be disturbed by reviewing courts. *Old Rochester Regional Teachers Club v. Old Rochester Regional*

---

[1] The parties are Local 364 and the City. Individuals have no mechanism to challenge an arbitration award.

3

*School District Commission*, 398 Mass. 695 (1977).

Thus, the Plaintiffs cannot attack the arbitration award. They can only argue that implementation of the award will result in unlawful discrimination.

### B. The Plaintiffs cannot establish their right to preliminary injunctive relief.

"The district court determines whether to issue a preliminary injunction by weighing four factors: '(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.'" *Bl(a)ck Tea Society v. City of Boston*, 378 F.3d 8 (1st Cir. 2004), citing *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (quoting *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996)).

1. Success on the Merits. The Plaintiffs assert that Local 364 has discriminated against them based on race, that implementation of the arbitration award conflicts with the consent decree entered in the case of *Castro v. Beecher*, 365 F. Supp. 655 (Dist. Ct. Mass. 1973), and that Local 364 has breeched its duty of fair representation to the Plaintiffs.[2]

*i. Discrimination based on race.* The Plaintiffs have asserted their claim of discrimination pursuant to 42 U.S.C. §1983. While employment discrimination can sustain a §1983 claim, *Washington v. Davis*, 426 U.S. 229 (1976), the Plaintiffs cannot establish the necessary elements

---

[2] This issue was not pleaded in the Plaintiffs' complaint, but first appears in Plaintiffs' Supplemental Memorandum in Support of Injunctive Relief.

4

in this case. Local 364 does not, and has not acted under color of law. This is an essential element of a §1983 claim, the absence of which is fatal.[3]

Though not so pleaded, the Plaintiffs' claim of discrimination based on race by an employer or a labor organization is governed by the provisions of 42 U.S.C. §2000e-2., which makes such discrimination an unlawful employment practice. That statute contains an exception which is dispositive of this case.

> "... (I)t shall not be an unlawful employment practice for an employer to apply different ... terms, conditions or privileges of employment pursuant to a *bona fide seniority* ... system ...provided such differences are not the result of an intention to discriminate because of race ...". 42 U.S.C. §2000e-2 (h).

***International Brotherhood of Teamsters v. United States***, 431 U.S. 747 (1977). In effect, the statute eliminates discrimination claims based on disparate impact, and requires proof of actual animus.

The disputed seniority provision was negotiated before the Plaintiffs were employed by the City and has been in all CBAs since. It provides a formula for assigning badge numbers for those officers who are appointed, and complete recruit training on the same date. Even those parts of a seniority system that turn on criteria other than length of service are protected from disparate impact claims. ***California Brewers Association v. Bryant***, 444 U.S. 598 (1980). The recruit training takes approximately six months after appointment. The formula is that badge numbers for such officers shall be in "... the order from the civil service list from which the applicants are appointed..."[4] The civil service list is already merged one-for-one, white and minority applicants, listing them

---

[3] A §1983 claim against the City for discrimination must surmount the higher hurdle of being done pursuant to a custom or policy. ***Rivera v. Puerto Rico Aqueduct and Sewers Authority***, 331 F.3d 183 (1st Cir. 2003).

[4] CBA, §7.02.

alternately based on their exam score relative to other white or minority candidates.[5] Indeed Local 364 and the City settled on the one-for-one civil service list formula in the belief that it would eliminate any possible claim of discrimination. The formula of §7.02 of the CBA is a bona fide seniority system, and thus the Plaintiffs must prove that Local 364 intentionally discriminated against them based on race. There is no such evidence..

***ii. Castro v. Beecher.*** The Plaintiffs also assert that the arbitration award conflicts with the terms of the consent decree. ***Id.***, at 660-662. It does not. That decree addresses only hiring practices, not badge numbers which are assigned almost six months after hiring in compliance with the consent decree.

***iii. Breach of duty of fair representation.*** As municipal employees, the Plaintiffs have no federal cause of action pursuant to 29 U.S.C. §159(a) for alleged breach of the duty of fair representation (BDFR) against their union.

The Plaintiffs' BDFR rights, if any, arise out G.L.c. 150E, §§ 5, 10(b)(1). The state law claim involves the same elements as a federal BDFR claim. ***Graham v. Quincy Food Service Employees Association***, 407 Mass. 601 (1990). A union breaches its duty of fair representation if its actions toward a member are "... arbitrary, discriminatory, or in bad faith." ***Vaca v. Sipes***, 386 U.S. 171 (1967). However, "(U)nions are permitted 'a wide range of reasonableness' in representing the ***often conflicting interests of employees***; hence, unions are vested with considerable discretion". (emphasis added) ***Graham v. Quincy Food Service Employees Association***, supra, at 606, citing

---

[5] Part of the Plaintiffs' attack on the arbitration award includes disputing which list is the "civil service list", as referred to in §7.02 of the CBA. There is no question which list is to be used. It was not disputed in the arbitration and determined by the arbitrator to be the list appended to the Plaintiffs' memorandum as Exhibit 1, Certification 1. Their attempt to dispute the list is another attempt to overturn the factual ruling of Arbitrator Higgins for which the court lacks authority.

***Baker v. Local 2977, State Council 93, AFSCME***, 25 Mass. App. Ct. 439, 441 (1988).

This court has jurisdiction over Plaintiffs' BDFR claim only if it has pendant or supplemental jurisdiction of the state law claim.

The state courts would have jurisdiction over this claim only if it is determined that the Massachusetts Labor Relations Commission does not have primary jurisdiction. A BDFR claim must be brought first to the Massachusetts Labor Relations Commission if adjudiction of the facts would benefit from the particular experience and expertise of that administrative agency. BDFR claims "... should normally be decided in the first instance by the (Labor Relations) commission." ***Leahy v. Local 1526, AFCSME***, 399 Mass. 341, 349 (1987).

To exercise pendant jurisdiction over a state claim, it must arise out of a common nucleus of facts as the federal claim. ***United Mine Workers v. Gibbs***, 385 U.S. 715 (1966). The court may have supplemental jurisdiction over the state DFR claim if it is "... so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Art. III of the United States Constitution." 28 U.S.C. §1367(a). The BDFR claim involves completely different facts than the discrimination claim over which the court has original jurisdiction. It would involve assessment and adjudication of the negligence, good faith, etc. of union officials.

This court lacks jurisdiction over the BDFR claim because (1) the state court lacks jurisdiction for failure to file with the Massachusetts Labor Relations Commission, and (2) the BDFR claim is not so related as to form part of the same case or controversy. In the absence of jurisdiction of this court, the Plaintiffs cannot prevail on the merits of their BDFR claim.

2. Irreparable harm. There will be no irreparable harm suffered by anyone as a result of the arbitration award. The only matters which may impact the Plaintiffs are (1) shift preference, and

7

(2) vacation selection precedence. In almost no cases will the badge number difference between the arbitration award, and the previous badge numbers issued in violation of the CBA, be immediately affected by the arbitration award. Due to recall of previously laid off employees, it is not anticipated that any employees adversely affected by the badge number arbitration award will have their work shift changed. Similarly, it is not clear that any Plaintiff will be affected in the vacation selection process, which does not occur until December of 2004, for vacation leave to be taken in 2005. While the Plaintiffs argue that they risk improper layoff in the absence of injunctive relief, there is no prospect of more layoffs. Since the February 2003 layoff of seventy-six police officers, no more have been laid off, and approximately twenty-eight have been recalled. The City's elected officials and the state Financial Control Board have repeatedly stated their intention to recall all of the laid off officers as soon as possible.

In all likelihood, few if any of the Plaintiffs will be affected. The issues affected by the arbitration award are not significant enough to constitute irreparable harm, and can all be easily remedied, if necessary, after the rights of the parties are determined.

3. Balance of impositions. As with any seniority dispute, there is inevitably an equal number of employees who will benefit, of not, depending on how the dispute is resolved. The Plaintiffs seek to retain the badge numbers which the arbitration award has found were given in violation of the CBA. For every Plaintiff in this action, there is another officer who has for some years been deprived of the badge number which the CBA provides he or she should have had. There are an equal number of persons who will be affected by either implementing the arbitration award, or by not implementing it. The benefit/detriment to each is the same. There is no greater imposition suffered by either group.

8

4. <u>Effect on the public interest.</u> The effect of the preliminary injunction sought by the Plaintiffs will be to temporarily determine which police officers have precedence in choosing their shift assignment, and in selecting the dates of their vacation in 2005. It will not affect the number of police officers on each shift. It will not affect the number of police officers on vacation. It will affect only the names of those police officers. These trivial matters are of importance only to the individuals affected. The public has no interest in these matters.

### III. SUMMARY.

The Plaintiffs cannot, for the reasons discussed above, establish their right to preliminary injunctive relief. Their motion should be denied.

FOR THE DEFENDANT LOCAL 364 IBPO

_____
Kevin B. Coyle
935 Main Street
Springfield, MA 01103
TEL (413) 787 1524
FAX (413) 787 1703
BBO 103540

I certify that a true copy of this document was served on counsel for all parties by first class mail.

November 5, 2004

_____
Kevin B. Coyle