committed to present evidence governed by *Castro v. Beecher* consent decree" and alleges that the arbitrator was "never informed of the hiring practices mandated by the federal consent decree" and did so "willfully, wantonly, maliciously and in reckless disregard for Plaintiffs' rights" causing damage. The preceding arguments in opposition are equally applicable here. Additionally, the fact that the arbitration decision itself refers to *Castro v. Beecher,* indicates the lack of any basis for this claim.

### Claim IV "Intentionally Creating a Hostile Work Environment"

This claim alleges that the City of Springfield Police Department "unlawfully failed to refuse to participate in an unlawful arbitration proceeding and failure to seek judicial review of unlawful arbitration created a hostile work environment" causing damage. The city could find no precedent for a duty or obligation to "refuse to participate". In fact, the collective bargaining agreement requires the City to participate, or face the consequences of an unfair labor claim under M.G.L. c. 150E.

While finding no precedent for the claim, the language used in this allegation evokes the concept of employment discrimination found in Title VII cases. No reference is made to this statute in the proposed complaint. Even if it was, Title VII mandates "compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e." *Bonilla v. Muebles ii Alvarez, Inc.,* 194 F.3d 275, 277 (1st Cir.1999). "[S]uch compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged violation." *Id.* In fact, 42 U.S.C. § 2000e-5(e), in pertinent part states that a charge shall be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," or within three hundred days if "the person aggrieved has initially institutionalized proceedings with [an authorized] State or local agency" or "within thirty days after receiving notice that the State or local agency has terminated the proceedings with a State

or local agency, whichever is earlier."

To the extent that plaintiffs' claims are under Title VII they should be stricken, because plaintiffs failed to include the aforementioned causes of action in any EEOC charge. The purpose of filing an administrative claim for discrimination is to provide defendants with "prompt notice of claims and to create an opportunity for early conciliation." *Lattimore v. Polaroid Corp.,* 99 F.3d 456, 464 (1st Cir.1996). Further, "[t]hat purpose would be frustrated if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action. Consequently, we have stated that, in [cases involving discrimination], 'the scope of the civil complaint is limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of the charge.' *Id.* (citing *Powers v. Grinnell Corp.,* 915 F.2d 34,37(1st Cir.1990)). *See Sanchez v. Standard Brands, Inc.,* 431 F.2d *455,* 466 (5th Cir.1970). Although compliance with administrative remedies is not a jurisdictional prerequisite, nevertheless, plaintiff may not circumvent the requirement. *See Zipes v. Trans World Airlines, Inc., 455* U.S. 385, 393, 102 S. Ct. 1127,71 L.Ed.2d 234 (1982); *Oscar Mayer& Co. v. Evans,* 441 U.S. 750, 757, 99 S. Ct. 2066, 60 L.Ed.2d 609 (1979).

Even if the Court could identify a cause of action for any of the types of discrimination outlawed by Title VII, the Court must conclude that plaintiff has failed to plead enough facts to establish a prima facie case under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), burden shifting framework for race, color, religion, gender or national origin discrimination.

To make out a hostile work environment claim, the plaintiff must show not only a contractual relationship but also two further elements: (1) that the plaintiff was exposed to comments, jokes, or acts of a racial nature by the defendant's employees; and (2) that the conduct had the purpose or effect of interfering with the plaintiffs work performance or created

an intimidating, hostile or offensive working environment. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 20-22, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993). In addition, the defendant will ordinarily only be liable for harassment by low-level employees if management-level employees knew or should have known about it. *See Burrell v. Star Nursery, Inc.,* 170 F.3d *951,* 955 (9th Cir.1999).

In this case, the plaintiffs do not alleged race-related incidents. While a plaintiff must show "more than a few isolated incidents of racial enmity," *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986), there is no "absolute numerical standard" by which to determine whether harassment has created a hostile environment, *Vance v. Southern Bell Telephone & Telegraph Co.,* 863 F.2d 1503, 1511 (11th Cir.1989). In the Supreme Court's words:

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 23, 114 S. Ct. 367.

In this case, there are no incidents alleged.

Defendant can speculate, solely for purposes of this motion, that plaintiffs are attempting to assert a claim for employment discrimination under 42 U.S.C. § 1983. *See Bradley v. Pittsburgh Board of Education,* 913 F.2d 1064, 1078-79 (3dCir.1990) (collecting cases); *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1573-76 (5th Cir.1989); *Ratliff v. City of Milwaukee,* 795 F.2d 612, 623-24 (7th Cir.1986); *Johnson v. Walgreen,* 980 F.2d 721, 1992 WL 357828 (1st Cir.1992).

While failure to exhaust administrative remedies under Title VII does not preclude the filing of a suit under section 1983, *Bey v. Schneider Sheetmetal, Inc.,* 603 F. Supp. 450, 452 (W.D.Pa.1985); *Suhr v. North Carolina State University Agricultural Research Service,* 1987 WL

5853 (E.D.N.C.) (stating that "dismissal of the Title VII action does not preclude trial on the §

1983 claims"), plaintiffs' complaint is devoid of any facts establishing a cause of action under

the § 1983.

It is settled law in the First Circuit that a civil rights action must be specifically pleaded

to withstand a motion to dismiss under Fed. R. Civ. P 12(b)(6). *Gilbert v. City of Cambridge,* 932

F.2d 51(1st Cir.1991); *Perez v. Autoridad de Energía Eléctrica de Puerto Rico,* 741 F. Supp. 23

(D.P.R.1990); *Johnson v. General Electric,* 840 F.2d 132, 138 (1st Cir.1988). "Section 1983

expressly embraces actions to redress 'deprivation[s, under color of state law,] of   rights,

privileges, or immunities secured by the Constitution.'" *Pontarelli v. Stone,* 930 F.2d 104, 114 (1st

Cir.1991). It is well settled that in order for a claim to be cognizable under section 1983, a

plaintiff must plead and prove three elements: (1) that the defendant acted under color of state

law, *Gomez v. Toledo,*   446 U.S. 635, 100 S. Ct. 1920, 64 L.Ed.2d 572 (1980); (2) that the

plaintiff was deprived of federally protected rights, privileges, or immunities, *Daniels v. Williams,*

474 U.S. 327, 330, 106 S. Ct. 662, 88 L.Ed.2d 662 (1986); and (3) that the defendant's alleged

conduct was causally connected to the plaintiffs deprivation. *Gutierrez-Rodriguez v. Cartagena,*

882 F.2d *553, 558* (1st Cir.1989); *Rizzo v. Goode,* 423 U.S. 362, 370, 96 S. Ct. 598, 46 L.Ed.2d

561 (1976). A plaintiff must "avoid tarring defendants' reputations unfairly" and that in order to

"prevent potential abuses, [courts] have consistently required plaintiffs to outline facts sufficient

to convey specific instances of unlawful discrimination." *The Dartmouth Review,* 889 F.2d at 16.

Hence, to succeed in a section 1983 action, plaintiffs must prove that defendants' actions were a

cause in fact or a proximate cause of plaintiffs injury. *See Collins v. City of Harker Heights,* 503

U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Voutour v. Vitale,* 761 F.2d 812, 820 (1st Cir.

1985).

The Court, after engaging in a liberal reading of the complaint in this case, taking the

alleged facts as true and indulging all reasonable inferences in favor of plaintiffs, must strike plaintiffs' claims against defendant under a presumed section 1983, specifically, for creating a hostile work environment based on a claim that the City "unlawfully failed to refuse to participate in an unlawful arbitration proceeding and failure to seek judicial review of unlawful arbitration award".

Without any allegation of what right is at stake, defendant is left to guess what type of cause of action they are alleging. Plaintiff has failed to specify in what way defendant violated rights to due process or any other rights. Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," *Daniels v. Williams,* 474 U.S. at 332, 106 S. Ct. at 665, courts have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law, see, *e.g., id.,* at 332-333, 106 S. Ct. at 665-666; *Baker v. McCollan,* 443 U.S. 137, 146, 99 S. Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); *Paul v. Davis,* 424 U.S. 693, 701, 96 S. Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

The reasoning in those cases applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship. See, *e.g., Bishop v. Wood,* 426 U.S. 341, 350, 96 S. Ct. 2074, 2080, 48 L.Ed.2d 684 (1976); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577-578, 92 S. Ct. 2701, 2709-27 10, 33 L.Ed.2d 548 (1972)." *Id.* at 127-28, 1069-70, 112 S. Ct. 1061.

In this case, Plaintiffs do not allege that they were transferred, denied promotions, or suffered any adverse personnel decision or any other deprivations less harsh than dismissal. They contend that they will be "stripped of seniority" by a reassignment of badge numbers, ordered by

an Arbitrator acting pursuant to state law, without any explanation beyond the conclusory statement as to any deprivation of rights. In addition to the lack of any specific deprivation, there is no explanation as to any causal relationship. The Supreme Court has stated that "[t]he Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions". *Collins,* 503 U.S. at 129, 112 S. Ct. at 1070. Such instances are more properly the area of arbitration, civil service and state court review of those decisions.

**Claim V "Defendants, City of Springfield Police Department and IBPO, Local 364 had a duty to seek judicial review of arbitration proceedings and to promptly disclose and disseminate all truthful information that would be material to the arbitration proceedings"**

The Plaintiffs' allege these actions were "willfully, wantonly, maliciously and in reckless disregard" of their rights and caused damages. The preceding arguments are equally applicable here. While the Union may have duties as to fair representation, the plaintiffs are not owed similar duties by their employer. While not plead, a reading of the complaint could appear to indicate the plaintiffs claim such duties arise out of the consent decree. However, as previously discussed, the consent decree does not pertain to seniority or layoffs, and there is nothing within the four corners of the consent decree which requires the City to contest the Arbitrator's decision.

A review of the facts indicates that the City apparently was under the mistaken belief that it had such a duty when it was "readjusting" seniority assignments to reflect the "one for one" hiring precepts of *Castro v. Beecher* at the time recruits graduated from the police academy. (See Affidavit of Captain William Cochrane). While the Boston Firefighters case *(Beecher II)* modifying the original consent decree and imposing an injunction on lay offs, appeared to provide a legal basis for this position, the vacating of the injunction as "moot" by the First Circuit and the *Stotts* decision point out that the lack of a basis for an appeal of the Arbitrator's

decision on that ground. Considering the fact that each of the plaintiffs has been employed since 1996, even if the department were faced with lay offs they are unlikely to lose their job as a result of a loss of seniority.

At that time, the issue of whether the statutory civil service lay off scheme of "last hired first fired" should be superseded may be ripe for decision. Under the present circumstances it is not.

### Claim VI "Breach of Plaintiffs' Castro v. Beecher Contractual Rights"

The preceding arguments are equally applicable here. In addition, (again being forced to speculate) plaintiffs may be attempting to find some implied cause of action as a result of the consent decree. There must be a deprivation "of a 'right' secured by a federal statute" before 42 U.S.C. § 1983 provides a remedial cause of action. *Ante*, at 771. Plaintiffs' claim of a federally enforceable "right" potentially raises the distinct question of whether the *Castro v. Beecher* consent decree itself has created an enforceable right to seniority enforceable in a § 1983, similar to an implied right of action case. See *Cort v. Ash,* 422 U.S. 66, 78, 95 S. Ct. 2080, 2088, 45 L.Ed.2d 26(1975). While novel, defendant is unaware of any precedent for such a claim, and there is no basis for creating one here.

Even if there was such a right, this court should abstain from taking jurisdiction at this time, until other remedies available under state law have been exhausted. *Younger v. Harris,* 401 U.S. 37, 91 S. Ct. 746 (1971).

### CONCLUSION

Based on a review of the *Castro v. Beecher* decree provisions and controlling precedent, it does not appear that the decree is applicable to the seniority decisions, which were the subject of the underlying arbitration. For the reasons set forth in this brief, the plaintiffs are not likely to succeed on the merits of their complaint. The complaint does not provide any factual

basis for asserting any claims, nor does in provide adequate notice of what claims plaintiffs are making. Based on the aforementioned reasons, plaintiffs motion to amend and motion for preliminary injunction should both be **DENIED** and Defendant City of Springfield's Motion to Strike should be **GRANTED**.

Respectfully submitted

DEFENDANT CITY OF
SPRINGFIELD POLICE DEPARTMENT

By: _____
Edward M. Pikula, Esq., BBO#: 377990
Associate City Solicitor

_____
Peter Murphy, BBO # 629377
Associate City Solicitor

CITY OF SPRINGFIELD LAW DEPATMENT
36 Court Street
Springfield, Massachusetts 01103
Telephone:       (413) 787-6085
Telefax:         (413) 787-6173

Dated: November 24, 2004

> **CERTIFICATE OF SERVICE**
> The undersigned hereby certifies that a true copy of the within Motion was this day served upon Plaintiff by mailing copy of same or hand delivery to counsel by mailing copy of same or hand delivery to counsel: **Tammy Sharif** and **Holly Dawn Battige,** Law Firm of Tammy Sharif, 1500 Main Street, Suite 270, Tower Square, Springfield, MA 01115 and 1242 Main Street, Ste. 314 Springfield, MA 01103 SIGNED under the pains and penalties of perjury.
> Dated: ' / /2004