UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Civil Action No. 04-30613-MAP

JULIO TOLEDO, ET AL
Plaintiffs

v.

IBPO LOCAL 364
Defendant

MOTION OF THE DEFENDANT IBPO LOCAL 364
TO DISMISS THE PLAINTIFFS' COMPLAINT

Now comes the Defendant IBPO Local 364 and moves, pursuant to Rules 12(b)(6), Fed R. Civ. P., to dismiss the Plaintiffs' Complaint.

I. BACKGROUND.

The Defendant Local 364, International Brotherhood of Police Officers is the exclusive representative (union) of a bargaining unit comprised of all full time, permanently appointed, non-supervisory police officers employed by the City of Springfield Police Department, duly organized according to the provisions of G.L.c. 150E. The bargaining unit is presently comprised of approximately three hundred seventy-five police officers, all of whom are members of Local 364.

Local 364 has for many years negotiated collective bargaining agreements (CBAs) with the City of Springfield establishing various wages, hours and other terms and conditions of employment for members of Local 364. Those CBAs, including the one in effect at all times relevant to this matter, include a provision whereby Local 364 and the City have agreed that their disputes regarding the interpretation and application of the CBA will be resolved by a grievance procedure culminating in binding arbitration.

In 2003 a dispute arose between Local 364 and the City regarding the relative seniority of certain police officers appointed after July 1, 1995. The dispute involved the assignment of badge numbers to three groups of police officers which were each appointed on the same date. The CBA provides in §7.02 that for police officers appointed on the same date, seniority (badge number) will be based on the appointees' position on the Civil Service list from which they were appointed.

After attempts by Local 364 and the City to resolve the matter by agreement failed, the dispute was submitted to arbitration according to the terms of the CBA. Arbitrator Richard Higgins made an award wherein he found that the City had assigned badge numbers in violation of the CBA, and directed the City to reassign badge numbers in accordance with the CBA. The City is required by statute to implement the Higgins award. G.L.c. 150E, §§1, 10; G.L.c. 150C, § 8.

The Plaintiffs seek by this civil action damages, and to enjoin the City from implementing with the Higgins award.

II. PLAINTIFFS' CLAIMS.

The Plaintiffs' six enumerated claims are summarized as follows. Claim I, violation of public policy as set forth in *Castro v. Beecher*, 365 F.Supp. 655 (Dist.Ct. Mass. 1973). Claim II, breach of statutory duty of fair representation. Claim III, breach of duty of fair representation for

2

failure to assert Plaintiffs' rights. Claim IV, intentionally creating a hostile work environment. Claim V, failure to seek judicial review of arbitration award and disseminate all information. Claim VI, breach of Plaintiffs' *Castro v. Beecher* contractual rights.

### III. ARGUMENT.

#### *A. There was no violation of public policy as articulated by Castro v. Beecher. (Claim I)*

The Plaintiffs assert that the arbitration award conflicts with the public policy terms of the consent decree, which mandates one-for-one hiring of whites and minorities. It does not. That decree addresses only hiring practices, not badge numbers which are assigned almost six months after hiring.

Even if the Plaintiffs pleaded their case as an unlawful discrimination claim, rather than deriving from the consent decree, it is very clear that compliance with a bona fide seniority provision of a CBA is not unlawful discrimination.

A claim of discrimination based on race against an employer or a labor organization is governed by the provisions of 42 U.S.C. §2000e-2., which makes such discrimination an unlawful employment practice. That statute contains an exception which is dispositive of this case.

> "... (I)t shall not be an unlawful employment practice for an employer to apply different ... terms, conditions or privileges of employment pursuant to a ***bona fide seniority*** ... system ...provided such differences are not the result of an intention to discriminate because of race ...". 42 U.S.C. §2000e-2 (h).

***International Brotherhood of Teamsters v. United States***, 431 U.S. 747 (1977). In effect, the statute eliminates discrimination claims based on disparate impact, and requires proof of actual animus.

The disputed seniority provision was negotiated before the Plaintiffs were employed by the

3

City and has been in all CBAs since. It provides a formula for assigning badge numbers to those officers who are appointed, and complete recruit training on the same date. Even those parts of a seniority system that turn on criteria other than length of service are protected from disparate impact claims. *California Brewers Association v. Bryant*, 444 U.S. 598 (1980). The recruit training takes approximately six months after appointment. The formula is that badge numbers for such officers shall be in "... the order from the civil service list from which the applicants are appointed.."[1] The civil service list is already merged one-for-one, white and minority applicants, listing them alternately based on their exam score relative to other white or minority candidates.[2] Indeed Local 364 and the City settled on the one-for-one civil service list formula in the belief that it would eliminate any possible claim of discrimination. The formula of §7.02 of the CBA is a bona fide seniority system, and thus the Plaintiffs must prove that Local 364 intentionally discriminated against them based on race. There is no such evidence.

### B. This court has no jurisdiction over the Plaintiffs' assertion that Local 364 breached a statutory duty of fair representation. (Claim II)

The Plaintiffs assert their right to pursue a claim for the breach of the duty of fair representation by Local 364 pursuant to the "LMRDA" (First Amended Complaint, ¶ 8.)

As municipal employees, the Plaintiffs have no federal cause of action pursuant to 29 U.S.C. §159(a) for alleged breach of the duty of fair representation (BDFR) against their union.

---

[1] CBA, §7.02.

[2] Part of the Plaintiffs' attack on the arbitration award includes disputing which list is the "civil service list", as referred to in §7.02 of the CBA. There is no question which list is to be used. It was not disputed in the arbitration and determined by the arbitrator to be the list appended to the Plaintiffs' memorandum as Exhibit 1, Certification 1. Their attempt to dispute the list is another attempt to overturn the factual ruling of Arbitrator Higgins for which the court lacks authority.

The Plaintiffs' BDFR rights, if any, arise out G.L.c. 150E, §§ 5, 10(b)(1). The state law claim involves the same elements as a federal BDFR claim. ***Graham v. Quincy Food Service Employees Association***, 407 Mass. 601 (1990). A union breaches its duty of fair representation if its actions toward a member are "... arbitrary, discriminatory, or in bad faith." ***Vaca v. Sipes***, 386 U.S. 171 (1967). However, "(U)nions are permitted 'a wide range of reasonableness' in representing the ***often conflicting interests of employees***; hence, unions are vested with considerable discretion". (emphasis added) ***Graham v. Quincy Food Service Employees Association***, supra, at 606, citing ***Baker v. Local 2977, State Council 93, AFSCME***, 25 Mass. App. Ct. 439, 441 (1988).

This court has jurisdiction over Plaintiffs' BDFR claim only if it has pendant or supplemental jurisdiction of an analogous state law claim.

The state courts would have jurisdiction over this claim only if it is determined that the Massachusetts Labor Relations Commission does not have primary jurisdiction. A BDFR claim must be brought first to the Massachusetts Labor Relations Commission if adjudication of the facts would benefit from the particular experience and expertise of that administrative agency. BDFR claims "... should normally be decided in the first instance by the (Labor Relations) commission." ***Leahy v. Local 1526, AFCSME***, 399 Mass. 341, 349 (1987).

To exercise pendant jurisdiction over a state claim, it must arise out of a common nucleus of facts as the federal claim. ***United Mine Workers v. Gibbs***, 385 U.S. 715 (1966). The court may have supplemental jurisdiction over the state DFR claim if it is "... so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Art. III of the United States Constitution." 28 U.S.C. §1367(a). The BDFR claim involves completely different facts than the federal claim over which the court has original jurisdiction. It would involve

assessment and adjudication of the negligence, good faith, etc. of union officials.

This court lacks jurisdiction over the BDFR claim because (1) the state court lacks jurisdiction for failure to file with the Massachusetts Labor Relations Commission, and (2) the BDFR claim is not so related as to form part of the same case or controversy. In the absence of jurisdiction of this court, the Plaintiffs cannot prevail on the merits of their BDFR claim.

### C. There was no breach of the duty of fair representation for failing to assert the Plaintiffs rights. (Claim III)

Even apart from the lack of jurisdiction discussed above, Local 364 has no duty to assert the Plaintiffs' arguments or position in an arbitration.

Local 364 is the exclusive representative of all full time police officers employed by the City of Springfield. Every seniority dispute inevitably involves two or more groups of members of the same union asserting different interpretations of the seniority provision. The union is not required to represent all sides of such a controversy, and the Plaintiffs cite no authority for such a duty. A union's obligation is to conduct a good faith inquiry into the underlying facts of the dispute, and take a position based on its own good faith interpretation of how the seniority provision should be applied to the facts of the case.

In this case, Local 364 did conduct such an inquiry. If found that the provisions of the agreement had not been followed, to the detriment of a significant number of its members. The Plaintiffs, who individually benefitted from the failure of the City to follow the provisions of the CBA, urged Local 364 to protect their unjustified benefit. After determining and fully considering the facts of the dispute, the executive board of Local 364 voted to enforce the language of the CBA, rather than ignore the violation as desired by the Plaintiffs.

It is for the union's duly elected officers to determine the position of the union on such matters. When that position is taken after a thorough investigation of the facts, and made in good faith, there is no breach of the duty of fair representation, even though the position of some members is not adopted.

### D. The Plaintiffs have not, and cannot, assert an unlawfully hostile environment. (Claim IV)

There is no general right to be free from a hostile environment. There is a right to be free from a work environment made hostile by unlawful discrimination, such as may be created by pervasive threatening or insulting comments regarding, race, gender, etc. There are no facts pleaded, nor which can be pleaded in this case, to support such a claim. That Local 364 decided in good faith to adopt a position which is contrary to the perceived interests of *some* of its minority members, does not create an unlawful hostile work environment.

### E. The Defendants have no duty to seek judicial review or disseminate any information. (Claim V)

The Plaintiffs assert that the failure of Defendants to appeal the Higgins award breached some duty to the Plaintiffs. There is no such duty.

As municipal employees, the Plaintiffs and Local 364 are not subject to the Labor Management Relations Act, 29 U.S.C. §185, and thus the normal appeal process of arbitration awards by private sector employers and employee organizations to the federal court is unavailable to the Plaintiffs, or even the parties to the arbitration. Review, if any, of Arbitrator Higgins' award must be pursuant to G.L.c. 150C, §§ 8, 11. Such review is limited to parties, *Miller v. Board of Regents of Higher Education*, 405 Mass. 475, 480 (1989), and must be filed within thirty days of

receipt of the award. Individual union members have no standing to seek judicial review of an arbitration award, but have only the right to assert that the union breached its duty of fair representation. *Id.* The Plaintiffs are not parties[3], and did not file within thirty days of the issuance of the award. In reviewing arbitration awards, Massachusetts courts have conformed to the principles of the *Steelworkers* trilogy, and uniformly refused to review arbitration award if the arbitrator was acting pursuant to a CBA and within the scope of his authority. Even errors of law, or obvious misinterpretations of the CBA will not be disturbed by reviewing courts. ***Old Rochester Regional Teachers Club v. Old Rochester Regional School District Commission***, 398 Mass. 695 (1977).

Local 364 won the arbitration. It had no duty to appeal it.

### *F. The Plaintiffs have no contractual rights pursuant to <u>Castro v. Beecher</u>. (Claim VI)*

The Plaintiffs have no contractual rights pursuant to ***Castro v. Beecher***. The consent decree establishes a formula for the one-for-one appointments of white and minority officers, and nothing

### III. SUMMARY.

The Plaintiffs have, for the reasons discussed above, failed to state a claim on which relief can be granted. Their complaint should be dismissed.

---

[3] The parties are Local 364 and the City. Individuals have no mechanism to challenge an arbitration award.

FOR THE DEFENDANT LOCAL 364 IBPO

---
Kevin B. Coyle
935 Main Street
Springfield, MA 01103
TEL (413) 787 1524
FAX (413) 787 1703
BBO 103540

I certify that a true copy of this document was served on counsel for all parties by first class mail.

January 31, 2005

---
Kevin B. Coyle